**Andrew P. GATES, Appellee**

v.

**Nancy J. Reed GATES, Appellant**

**Andrew P. Gates, Appellee**

v.

**Nancy J. Reed Gates, Appellant**

**Andrew P. Gates, Appellee**

v.

**Nancy J. Reed Gates, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2008.
Filed March 10, 2009.

---

Toni M. Cherry, DuBois, for appellant.

Kimberly M. Kubista, Clearfield, for appellee.

BEFORE: BOWES, FREEDBERG, and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 In these consolidated appeals Nancy Gates ("Mother") appeals (1) an April 8, 2008 order, wherein the trial court, *inter alia,* directed her to execute a consent to release records of her psychiatric treatment to Andrew Gates ("Father"); and (2) a May 16, 2008 order finding Mother in contempt for failing to comply with the April 8, 2008 order and summarily suspending her custodial rights to the parties' son, Jonathan. Upon review, we reverse the April 8, 2008 order in part, and we vacate the May 16, 2008 order.[1]

---

1. We quash the appeal listed on our docket at 1026 WDA 2008 because it is duplicative of the appeal Mother filed at 1023 WDA 2008. Apparently, separate counsel, each acting in-

¶ 2 Mother and Father were married on May 13, 1995. They are the natural parents of Jonathan, born on October 12, 1999. On August 19, 2005, Father filed a complaint for divorce seeking, *inter alia,* sole legal and physical custody of Jonathan. The trial court entered a divorce decree on May 16, 2006, and on October 13, 2006, the trial court entered a final custody order, dated October 9, 2006, wherein it awarded Father primary physical custody and granted Mother periods of partial physical custody. Father initially appealed the custody order; however, he subsequently abandoned that appeal. *See Gates v. Gates,* 933 A.2d 102, 105 n. 1 (Pa.Super.2007).

¶ 3 Thereafter, on December 31, 2007, Father filed a "petition for special relief" seeking an order directing Mother to release her mental health records. Father had recently discovered that Mother had received inpatient mental health services from Dubois Regional Medical Center between December 12, 2007, and December 27, 2007. Mother challenged the trial court's jurisdiction to consider Father's petition for special relief because a custody action was not pending. The trial court agreed and issued an order holding Father's petition in abeyance until Father filed a petition to modify the existing custody order. Father did so on February 5, 2008.[2]

¶ 4 Mother's answer to the petition to modify challenged Father's claimed right to seek her privileged mental health records. However, during an *in camera* exchange with the trial court on March 28, 2008, Mother acknowledged the trial court's authority, pursuant to Pa.R.C.P. 1915.8, to direct her to submit to a mental evaluation before a court approved expert. Nonetheless, Mother maintained her objection to releasing the privileged medical records to Father.

¶ 5 Immediately after the *in camera* conference, the trial court permitted Father to question Mother, as if she was on cross-examination, about her December 2007 hospitalization generally. Specifically, Mother indicated that she went to the hospital because she believed her medication was working improperly, and upon examination, her physicians informed her that she would be required to stay for observation so they could monitor the medication. Although Mother testified without objection during the hearing, she continued to object to Father's request for her mental health records, and she noted, for the record, that Father's petition for modification did not challenge the level of care Mother provided Jonathan or allege that Mother presented any risk of harm to Jonathan. *See* N.T. Custody Modification Hearing, 3/28/08, at 44.

¶ 6 On April 8, 2008, the trial court entered the order directing Mother to exe-

dependently on Mother's behalf, filed notices of appeal from the trial court's May 16, 2008 order. On July 22, 2008, this Court granted the attorneys that filed the redundant appeal leave to withdraw from representation, and we entered Toni M. Cherry, Esquire as the attorney of record. Attorney Cherry represents Mother in both of the remaining appeals.

**2.** Although Father's "Petition for Modification" ostensibly sought to alter the parties' custodial rights, the petition did not allege

that Mother was incapable of caring for Jonathan, and the essential point of the petition was to reiterate Father's request for Mother's mental health records, which he claimed would determine whether modification was warranted. Since the petition commenced the latest round of "child custody proceedings" as the term is defined by 23 Pa.C.S. § 5402, the petition was sufficient to confer subject matter jurisdiction over the custody matter. *See* 23 Pa.C.S. § 5422(a).

cute a consent to release her mental health records to Father.[3] After Mother filed a timely notice of appeal on April 30, 2008, Father countered on May 1, 2008, with a petition for contempt alleging Mother's non-compliance with the April 8, 2008 order. On May 5, 2008, the trial court entered an order directing Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.1925(b), and Mother complied on May 23, 2008. Meanwhile, following a hearing on the contempt petition on May 16, 2008, the trial court entered an order finding Mother in contempt, suspending Mother's custodial rights, and awarding Father counsel fees totaling $625.00. Mother filed a timely notice of appeal from the May 16, 2008 order on Monday, June 16, 2008. *See* 1 Pa.C.S. § 1908 (when last day of period falls on weekend or legal holiday, the day is omitted from the computation of time). The trial court did not direct Mother to file a second Rule 1925(b) statement.

¶ 7 On June 24, 2008, this Court granted Mother's application for *supersedeas*, staying both the portion of the April 8, 2008 order, wherein the trial court directed Mother to release her psychiatric records and the portion of the May 16, 2008 order, wherein the trial court suspended Mother's custodial rights. Later, on July 3, 2008, acting *sua sponte*, we consolidated the appeals to be briefed and argued as one.

¶ 8 Mother presents the following questions for our review:

I. Whether the trial court violated mother's right to privacy under [50 P.S. § 7111(a) (Confidentiality of records) and 42 Pa.C.S. § 5944 (Confidential communications to psychiatrists or licensed psychologists) ] by ordering Mother to execute releases making her psychiatric treatment records available to the court and to Father?

II. Whether the trial court erred in holding Mother in contempt and assessing counsel fees for Mother's refusal to obey an order which violated Mother's rights to privacy under [50 P.S. 7111(a) (Confidentiality of records) and 42 Pa. C.S. § 5944 (Confidential communications to psychiatrists or licensed psychologists)]?

III. Whether the trial court violated Mother's right to due process under the United States Constitution and the Pennsylvania Constitution by terminating Mother's custodial rights without a full evidentiary hearing?

Mother's brief at 8.

■■■ ¶ 9 At the outset, we note our standard of review:

Our standard of review over a custody order is for a gross abuse of discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused. Our scope of review over custody disputes is broad; this Court is not bound by the deductions and inferences the trial court derives from its findings of fact, nor must we accept the trial court's findings of fact when these findings are not supported by competent evidence of record. Our paramount concern in child custody matters is the best interests of the children.

*Ottolini v. Barrett,* 954 A.2d 610, 612 (Pa.Super.2008) (internal citations omitted).

---

**3.** The order also addressed the parties' conduct during their respective periods of physical custody and during custody exchanges. Mother does not challenge this aspect of the order.

■ ¶ 10 Mother's first issue implicates the statutory privileges outlined in the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7111(a) and the Judicial Code, 42 Pa.C.S. § 5944. While the provisions of 42 Pa.C.S. § 5944 relate only to confidential communications with psychiatrists or psychologists that were made in the course of treatment, section 7111(a) of the MHPA applies to all documents regarding mental health treatment. *Compare Commonwealth v. Moody,* 843 A.2d 402, 406 (Pa.Super.2004) (opinions, observations, and diagnoses are not protected by privilege of confidential communications between psychotherapist and patient) with *Zane v. Friends Hospital,* 575 Pa. 236, 247, 836 A.2d 25, 32 (2003) (under § 7111(a) all documents regarding treatment, not just medical records, shall be kept confidential).

¶ 11 In rejecting Mother's attempt to invoke the psychotherapist-patient privilege pursuant to 42 Pa.C.S. § 5944, the trial court reasoned, *inter alia,* that the documents Father requested were not communications between Mother and her psychiatrist or psychologist as contemplated in that statute. The record concededly supports this conclusion.

¶ 12 Herein, the trial court specifically ordered Mother to release her treatment summaries from the December 12, 2007 hospitalization, hospital admission and discharge summaries, reason for hospitalization, current medications, and treatment plans. *See* Trial Court Order, 4/8/08, at 1–2. To the extent these records do not contain any communications Mother made to her psychiatrist, the records are not tantamount to a confidential communication under section 5944, and section 5944 does not protect these types of items from disclosure. *See Moody, supra; see also Grimminger v. Maitra,* 887 A.2d 276, 279 (Pa.Super.2005) ("our case law has drawn a distinction between information learned by a physician through communication to him by a patient and information acquired through examination and observation").

¶ 13 However, with regard to the confidentiality of Mother's mental health records, we observe that 50 P.S. § 7111(a) is a broad provision that applies to all of the records concerning Mother's mental health treatment.[4] *See Zane, supra.* Of note, the trial court conceded that this provision of the MHPA normally would bar the release of Mother's mental health records. *See* Trial Court Opinion, 6/27/08, at 6. However, the trial court concluded that Mother had waived her privilege during the course of the custody proceedings by (1) conceding the court's authority to order an evaluation; (2) failing to invoke the privilege at the first opportunity; and (3) agreeing during the initial custody proceedings in 2005 to release certain medical documents. *Id.* at 6–7. For the following reasons, we find the record does not support the trial court's conclusion that Mother waived the statutory privilege of confidentiality.

■ ¶ 14 The trial court's first claim of waiver mischaracterizes its authority to di-

4. 50 P.S. § 7111(a) provides, in pertinent part, as follows:
(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
(1) those engaged in providing treatment for the person;
(2) the county administrator, pursuant to section 110;
(3) a court in the course of legal proceedings authorized by this act; and
(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

rect parties to submit to physical and mental evaluations pursuant to Pa.R.C.P. 1915.8. The trial court reasoned that since Mother agreed the trial court was authorized to order her to submit to a mental health evaluation, by extension, she admitted that the court was empowered to order her to release the records of her mental health treatment. *Id.* at 8. This is not the case. While Mother acknowledged the trial court's authority pursuant to Rule 1915.8 and even suggested the trial court direct both parties to submit to psychological evaluation, Mother has consistently maintained that her mental health records were privileged documents that she could not be compelled to disclose. *See* Answer to Petition for Modification, 3/28/08, at 1–3, 5.

¶ 15 The trial court also misstates Mother's initial objection to Father's request. The trial court claims Mother initially challenged the court's **authority** to order her to disclose the information until Father filed a petition to modify the custody order and later changed her position only after Father filed his petition to modify the custody order. *See* Trial Court Opinion, 6/27/08, at 2, 6. However, in reality, Mother never agreed that the trial court had authority to order her to disclose the privileged medical information, regardless of whether Father had filed his petition for modification. Instead, Mother challenged the trial court's **jurisdiction** to consider Father's request until he filed a petition for modification. *See* Trial Court Order, 1/28/08. Hence, the record does not support the trial court's finding that Mother previously recognized the trial court's authority to compel her to disclose the requested information.[5]

 ¶ 16 Similarly, the record does not support the trial court's conclusion that Mother waived her statutory rights of confidentiality because she did not specifically invoke the MHPA in her answer to Father's petition for modification or during the March 28, 2008 custody hearing. *Id.* at 6–7. Essentially, the trial court held that since Mother only first identified section 7111(a) during the contempt hearing on May 16, 2008, that claim is waived. *Id.* at 7.

¶ 17 However, as previously noted, the record demonstrates that Mother has consistently asserted that her mental health records were privileged information. Mother initially asserted a privacy privilege in her answer to Father's petition to modify the custody order, wherein she contended that the information was privileged, and she specifically requested the trial court "[dismiss] Father's demand for privileged medical information...." Answer to Petition for Modification, 3/28/08, at 1, 5. Mother maintained this position throughout her *in camera* discussion with the trial court and prior to the evidentiary hearing. *See* Trial Court Opinion, 6/27/08, at 2.

¶ 18 Moreover, as she accurately points out, Mother was not required to cite the specific statutory provisions upon which she predicated her claim that the mental health records were privileged. Pursuant to Pa.R.C.P. 1019, which governs the content of pleadings, Pennsylvania utilizes a fact-pleading scheme, in which parties "must not only [provide] notice of . . . the . . . claim . . . and the grounds upon which it rests, but . . . also formulate the issues by summarizing those facts essential to

5. Inexplicably, Father reiterates this misstatement of fact and asserts that Mother later "recanted" her earlier petition vis-à-vis the court's authority to compel disclosure. *See* Father's brief at 2–3. Father's position is ironic considering that his misstep, in filing a "petition for special relief" with a trial court which lacked subject matter jurisdiction, was the genesis of Mother's jurisdictional challenge.

support the claim." *Lerner v. Lerner*, 954 A.2d 1229, 1235 (Pa.Super.2008). Herein, Mother pled the material facts upon which her privilege was based as follows:

> "It is specifically, DENIED that Father has the right to file a Petition for Modification simply to secure privileged information concerning Mother's medical condition when he has no evidence that Mother's medical condition has harmed the minor child."

Answer to Petition for Modification, 3/28/08, at 1.

¶ 19 Mother's averment was sufficient to provide Father notice of her assertion, the grounds upon which it rests, and the essential supporting facts, *i.e.*, Father sought Mother's medical records, and Mother's medical records are privileged. Once Mother alleged these material facts, she satisfied her fact-pleading requirements. Accordingly, unlike the trial court, we cannot conclude that Mother has waived her claim that the mental health records are confidential simply because she did not cite the MHPA directly.[6]

■ ¶ 20 The record also fails to sustain the trial court's conclusion that Mother waived her privilege of confidentiality because she previously agreed to release certain medical documents concerning the initial custody proceedings in 2005. This issue concerns the following facts. While the parties were litigating their divorce, Mother voluntarily consented to release her psychiatric records in order to resolve a custody dispute pending at that juncture. Those issues were finalized by the custody order entered on October 9, 2006. Significantly, that order did not contemplate Mother's continued release of her mental health records upon Father's peti-

tion. Accordingly, any consent that Mother executed pursuant to the 2005 agreement has no bearing upon Father's request to uncover Mother's mental health records relative to her December 12, 2007 hospitalization. Simply stated, Mother's consent to release her mental health records for a specific purpose three years ago did not vitiate the confidentiality of her most recent mental health records.

■ ¶ 21 Next, we address Father's related claim that Mother waived her privilege of confidentiality by testifying, without objection, during the March 28, 2008 hearing about the specifics of her mental health treatment. We disagree.

¶ 22 As noted *supra*, during the custody hearing, the trial court permitted Father to examine Mother, as if she was on cross-examination, in order to determine whether to compel Mother to release the pertinent mental health records. During the examination, Father elicited testimony from Mother concerning the circumstances of Mother's December 12, 2007 hospitalization generally, including her diagnosis, medications, and the nature of her post-discharge therapy. *See* N.T., 3/28/08, at 6–15, 22–25. Although Mother did not object to Father's questioning, we are reluctant to conclude that Mother waived the statutory privilege of confidentiality.

¶ 23 Mother consistently argued the requested information was privileged, and she reiterated her assertion during the *in camera* discussion immediately preceding the March 28, 2008 hearing that the trial court convened expressly to determine whether she must disclose the information she was attempting to shield. Moreover,

---

6. For identical reasons, we reject Father's complaint that Mother did not raise her claims "in the appropriate stage of the proceedings...." *See* Father's brief at 9. As not-

ed, Mother first asserted the privilege in her response to Father's petition to modify custody, the earliest possible pleading. Thus, this claim fails.

the record reveals that Mother continued to challenge Father's request for her mental health records after the cross-examination. N.T., 3/28/08, at 44. Thus, under the circumstances of the case at bar, we find that Mother did not waive her privilege of nondisclosure.

¶ 24 Furthermore, we acknowledge and cannot emphasize too strongly an expectation of confidentiality in mental health records is critical to effective mental health treatment. *Zane*, 575 Pa. at 250, 836 A.2d at 33. As our Supreme Court stated in *Zane, supra:*

> The importance of confidentiality cannot be overemphasized. To require the Hospital to disclose mental health records ... would not only violate [the] statutory guarantee of confidentiality, but would have a chilling effect on mental health treatment in general. The purpose of the Mental Health Procedures Act of seeking "to assure the availability of adequate treatment to persons who are mentally ill," 50 P.S. § 7102, would be severely crippled if a patient's records could be the subject of discovery in a panoply of possible legal proceedings.

*Id.* at 250–51, 836 A.2d at 34.

¶ 25 Presuming Father's primary purpose in seeking the privileged documents was to ensure the existing custody order was in Jonathan's best interest, we recognize that Father was entitled to place Mother's mental condition at issue in the custody proceedings. Nonetheless, less intrusive means exist for the trial court to make a determination as to Mother's suitability as a custodial parent, rather than releasing Mother's privileged mental-health records from her December 2007 hospitalization and vitiating her statutory right of confidentiality. For example, Father can utilize Mother's testimony from the March 28, 2008 hearing to attempt to sustain his burden of proving modification

is warranted, and if further inquiry into Mother's mental health is necessary, the trial court can order Mother to submit to a psychological evaluation pursuant to Rule 1915.8. However, Mother's mental health records are not subject to disclosure.

¶ 26 Father asserts that Mother's reliance on *Zane* is misplaced, in part, because that case involves a civil dispute in tort rather than a custody matter, where consideration of the child's best interest is paramount. We disagree, and instead, we conclude the MHPA is equally applicable in a custody dispute as it is in a civil matter. We hold so especially where, as here, less intrusive alternatives exist to determine the effect of a party's mental health upon the child's best interest. *See T.B. v. L.R.M.,* 874 A.2d 34, 38 (Pa.Super.2005) ("while psychiatric considerations may very well be important, they must not be made determinative, for in deciding upon a child's best interest[,] the court must take many factors into account."). Accordingly, we reverse the portion of the trial court's April 8, 2008 order that directs Mother to release her mental health records relating to the December 12, 2007 hospitalization.

¶ 27 Having found that the trial court erred in concluding that Mother waived her privilege of confidentiality in her mental health records, and it violated Mother's statutory privacy rights by ordering her to disclose those records, we next review the trial court's May 16, 2008 finding of contempt against Mother for failing to comply with the April 8, 2008 order. Upon review, we vacate the May 16, 2008 order finding Mother in contempt.

¶ 28 In *Hopkins v. Byes,* 954 A.2d 654, 655 (Pa.Super.2008), we recently reiterated our standard of review as follows: "When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, our scope of review is narrow: we will reverse only upon a

showing the court abused its discretion." Further, as it relates to whether a finding of contempt is warranted, this Court explained in *In re Contempt of Cullen*, 849 A.2d 1207, 1210–11 (Pa.Super.2004),

> [t]o sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he has alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent.

(citations and internal quotation marks omitted).

¶ 29 Instantly, Mother argues that the trial court's contempt order was tantamount to an abuse of discretion because Father did not demonstrate that she acted with wrongful intent. Relying upon our Supreme Court's reasoning in *Zane, supra*, Mother contends that she was justified in declining to disclose her confidential mental health records because she would have been irreparably harmed if she had released the documents pending the outcome of this appeal. We agree.

¶ 30 In *Zane*, our Supreme Court addressed a similar issue in the context of determining whether the clearly-erroneous exception applied to the so-called coordinate jurisdiction rule. The plaintiff in that case filed a negligence action against Friends Hospital and one of its patients alleging that the patient assaulted her physically and sexually. *Id.* at 240, 836 A.2d at 27. As part of discovery, the plaintiff requested Friends Hospital to disclose the patient's psychiatric records. *Id.* Friend's Hospital refused the request, claiming the information was protected from disclosure under section 7111(a) of the MHPA. *Id.* at 240–41, 836 A.2d at 27–28. The trial court initially denied the plaintiff's motion to compel; however, upon reconsideration, the trial court ordered Friend's Hospital to produce the documents for *in camera* inspection. *Id.* at 241, 836 A.2d at 28. Friends Hospital continued to invoke the MHPA, and it refused to disclose the patient's mental health records for *in camera* review. *Id.* In response, the plaintiff moved for sanctions against Friends Hospital for noncompliance, which a second judge of coordinate jurisdiction, the Honorable Nitza Quinones Alejandro, denied. *Id.* Thereafter, Friends Hospital was granted summary judgment because the plaintiff could not establish her claim against the hospital without the patient's psychiatric records. *Id.* at 241–42, 836 A.2d at 28.

¶ 31 On appeal, this Court vacated both the order granting summary judgment and Judge Alejandro's order permitting the hospital's noncompliance. We held that Judge Alejandro's order violated the coordinate jurisdiction rule in failing to defer to the initial order to produce the psychiatric records for *in camera* review. *Id.* at 242, 836 A.2d at 28. Our Supreme Court reversed, holding that in light of the confidentiality provision of 50 P.S. § 7111, Judge Alejandro's order fell within the exception to the coordinate jurisdiction rule permitting her to revisit the prior holding because the prior holding was clearly erroneous and would create a manifest injustice if followed. *Id.* at 251, 836 A.2d at 34.

¶ 32 In reaching its conclusion the Supreme Court stated, in pertinent part,

> "to release such documents for review ..., only to have an appellate court reverse such decision on appeal, would result in the confidential nature of the records being forever lost. In conclusion, we find that disclosure of the otherwise confidential mental health records would create a manifest injustice...."

*Id.*

¶ 33 The identical reasoning applies in the case *sub judice*. Similar to the defen-

dants in *Zane,* if Mother had complied with the trial court's order to release her mental health records before we had an opportunity to resolve the issue of confidentiality, she would have suffered irretrievable injustice once we had determined the privilege applied. This consideration is particularly important in this case, where the trial court previously cautioned Mother that her appeal from its order directing her to produce the documents would be futile. Specifically, the trial court warned, "[F]rankly, if you appeal it, I wouldn't give you a stay, I'd make you turn them over anyway. So I don't know that it's going to do you any good." N.T., 4/28/08, at 45.

¶ 34 In light of the significant likelihood that she would suffer irreparable harm if she complied with the trial court's order to disclose her confidential mental health records, we conclude that Mother did not act with wrongful intent. Hence, we vacate the order finding her in contempt for failing to comply with the April 8, 2008 order directing the release of privileged mental health information.

¶ 35 For all of the foregoing reasons, we reverse the portion of the April 8, 2008 order wherein the trial court directed Mother to release her mental health records concerning her December 2007 hospitalization, and we vacate the trial court's May 16, 2008 order finding Mother in contempt.

¶ 36 Order entered on April 8, 2008, reversed in part. Order entered on May 16, 2008, vacated. Jurisdiction relinquished.