J-A05028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.J.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.K. | : | |
| | : | |
| Appellant | : | No. 1402 WDA 2019 |

Appeal from the Order Entered August 15, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s): No. FD16-008406-017

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 27, 2020**

E.K. ("Mother") appeals from the custody order dated August 12, 2019 and entered August 15, 2019, awarding A.J.D. ("Father") sole legal custody and primary physical custody of their minor daughter, M.D., born in January of 2014. The order also provided Mother with one week of domestic vacation with M.D. each summer and required Mother to immediately submit to an independent psychological evaluation and subsequent treatment, attend parenting classes, and pay Father's counsel fees in the amount of $750.00. We affirm.

Mother and Father never married. The parties resided together with M.D. until 2016 when Mother and M.D. left the residence. Father filed a custody complaint in July of 2016. The parties' initial consent decree, entered

_____

[*] Retired Senior Judge assigned to the Superior Court.

September 27, 2016, granted Mother primary physical custody of M.D., and Father partial physical custody every Friday at 4:30 p.m. until Monday at 9:00 a.m.

On November 24, 2017, in what she alleged was an attempt to get Father's attention, Mother made suicidal comments to Father. Father contacted the police, and involuntarily committed Mother to Western Psychiatric Institute and Clinic ("WPIC"). Mother was evaluated and released a few days later, but alleged that, when she sought to regain custody of M.D., Father refused. On December 1, 2017, Mother filed an Emergency Motion for Contempt, and alleged, after weekend visitation with Father, M.D. is angry, bites and kicks Mother, wets the bed, and generally acts out. Mother alleged she attempted to voice her concerns to Father, but Father did not respond.

On December 5, 2017, Father filed an Emergency Motion for Custody and requested primary physical custody of M.D., subject to partial supervised physical custody with Mother. Father alleged Mother attempted suicide five days ago, and was involuntarily committed for psychiatric treatment as a result. Father alleged that Mother "[e]xhibited bizarre and irrational behavior at custody exchanges, crying uncontrollably, throwing herself on [F]ather's car and berating [F]ather while holding [M.D.]." N.T., 6/10/19, at 106. Father also alleged that Mother made a report to Allegheny County Children Youth and Families ("CYF") that Father abused M.D., but that report was unfounded. Trial Court Opinion, 10/11/19, at 4. With respect to the incident on November 24, 2017, Father alleged, after he took custody of M.D., he received e-mails

from Mother that indicated that she took sleeping pills and were suicidal in nature. Father claimed that, in response, he contacted the police, Mother was involuntarily committed, and she was released after seventy-two hours, on November 28, 2017. Father stated that he withheld custody of M.D. because he was concerned with Mother's "bizarre behavior and deteriorated mental state." N.T., 6/10/19, at 106.

On June 8, 2018, an order was entered which granted the parties shared legal custody of M.D. A lengthy and contentious motions history ensued. On May 17, 2019, Father filed a motion for special relief regarding his vacation with M.D., and preserving a request for $750.00 in counsel fees. *See* Trial Court Opinion, 10/11/19, at 12-13. On May 16, 2019, the trial court entered an order allowing Father to take M.D. on vacation. *Id*. at 13.

The trial court conducted a custody trial on June 10, 11, and 25, 2019. Father and Mother testified on their own behalf, and both called various supporting witnesses. Father presented his mother, C.D., and his attorney, who testified about the request for counsel fees. Mother presented the testimony of two friends, J.S. and G.S., and a psychological expert, Eric Bernstein, Psy.D. In addition, the court considered the testimony of Patricia Pepe, Ph.D., the court-appointed custody evaluator.

By memorandum and order dated August 12, 2019, the trial court addressed each of the sixteen factors enumerated in § 5328(a), and awarded Father sole legal custody and primary physical custody of M.D., with Mother having periods of partial physical custody every other weekend. Trial Court

Order, 8/12/19, at 10.  The trial court awarded Mother one week of domestic travel with M.D. each summer.  *Id*. at 13.  Mother was ordered to submit to an independent psychological evaluation, comply with recommended treatment, and attend parenting classes.  *Id*. at 13, 15.  The trial court also awarded Father $750.00 in counsel fees in relation to litigating his May 16, 2019 special relief motion.  *Id*. at 15.

Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Thereafter, the trial court filed its Rule 1925(a) opinion on October 11, 2019.[1]

On appeal, Mother raises the following issues for our review:

I.  Whether the [t]rial [c]ourt committed an abuse of discretion in finding that it was in the child's best interest for Father to be awarded sole legal custody and primary physical custody when the evidence at trial and the court's own analysis of the custody factors under 23 Pa.C.S. § 5328 does not support such a finding.

II.  Whether the [t]rial [c]ourt committed an abuse of discretion and an error of law to limit Mother's vacation periods to one week of domestic travel only.

III.  Whether the [t]rial [c]ourt committed an abuse of discretion and an error of law in requiring Mother to obtain an independent psychological evaluation,

_____

[1] As we find Mother's Rule 1925 Statement adequate for our review, we deny Father's Motion to Quash, filed on November 6, 2019, challenging it as too vague.

> attend parenting classes and pay Father's counsel fees
> in the amount of $750.00. [2]

Mother's brief at 9.[3]

The scope and standard of review in custody matters is as follows.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 244, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting

***Bovard v. Baker***, 126, 775 A.2d 835, 838 (Pa.Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has

---

[2] Mother's third issue consists of a combination of the fourth and fifth issues listed in Mother's Rule 1925 statement. Accordingly, this issue is preserved but is merely raised another way.

[3] At the outset, we observe that Mother raised an additional issue challenging the weight of the evidence supporting the award of primary physical custody, but she failed to assert it in her Rule 1925(b) statement. Thus, the issue is waived. ***See Krebs v. United Refining Co.***, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); ***see also In re W.H.***, 25 A.3d 330, 339 n.3 (Pa.Super. 2011); ***see also In re M.Z.T.M.W.***, 163 A.3d 462, 465-66 (Pa.Super. 2017). We, nevertheless, would find such a challenge lacks merit for the reasons set forth in the body of the memorandum.

had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.M.G., Jr.,** *supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 902 A.2d 533, 539 (Pa.Super. 2006).

**A.V. v. S.T.,** 87 A.3d 818, 820 (Pa.Super. 2014).

When awarding any form of custody, the Child Custody Act, 23 Pa.C.S. §§ 5321–5340, provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

- 6 -

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

This Court has stated that, "**[a]ll** of the factors listed in § 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). The trial court carefully considered the foregoing custody factors and entered an opinion summarizing its rationale for granting Father primary physical custody. Of the sixteen custody factors, the trial court determined that eight factors were either neutral or not applicable, *i.e.*, (a)(2), (5), (6), (7), (10), (11), (12) and (16); three factors were positive for Father, (a)(1), (4), and (9)); one factor was negative for Father, (a)(14); and four factors were negative for Mother, (a)(3), (8), (13) and (15)).[4]

Mother's first contention is whether the trial court committed an abuse of discretion in finding that it was in M.D.'s best interest for Father to be awarded sole legal custody and primary physical custody when the evidence at trial and the court's own analysis of the custody factors under 23 Pa.C.S. § 5328(a) does not support such a finding. Mother argues that the trial court's conclusions with regard to factors (1), (3), (4) and (8), are not supported by the record. For the reasons that follow, we disagree.

With respect to § 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, the trial court found that the testimony established that this factor militated heavily in Father's favor.

---

[4] We observe that the trial court did not address factor (a)(2.1), but, as the trial court found factor (a)(2) was inapplicable to the evidence before it, we would assume that the trial court found factor (a)(2.1), also regarding abuse, was inapplicable, and we find nothing in the evidence to suggest otherwise.

> Father is more likely to encourage and permit continuing contact between Mother and the child, and that Mother is likely to continue to obstruct the same. Father withheld custody of the child from Mother when she was committed to WPIC, out of concerns for the child's safety in Mother's care. This appears to be an isolated incident which is unlikely to occur again, absent some similar emergency.

Trial Court Memorandum, 8/12/19, at 3. The trial court continued that "Father offered in evidence many text messages in which he asked Mother to allow him to FaceTime the child and she refused, saying they were busy or otherwise unable to talk. He has not been able to communicate with the child using FaceTime on a consistent basis, despite an Order of Court granting each party reasonable FaceTime contact when the child is in the other party's custody." *Id*. When cross-examined about Mother's failure to effect FaceTime communication with Father, Mother testified:

> [Mother]   I had trouble sometimes getting her to speak to her father if she doesn't want to.
>
> [Father's Counsel]  Sure. So that's not her decision, though. Don't you understand those are….things that you need to make her do. You're her mother.
>
> [Mother]   How do you suggest to me to make her do that except encouraging her?
>
> [Father's Counsel]   You would agree those are things that you need to make her do.
>
> . . . .
>
> [Mother]   But how else would you suggest me to force my daughter to do that?
>
> [Father's Counsel]   I'm not - - ma'am, I'm not here - -

- 9 -

[Mother]    Do I hit her? Should I hit her?

N.T., 6/11/19, at 241-242. Conversely, there was testimony that Mother attempted to FaceTime with M.D. more than thirty times and sent Father more than forty text messages in one weekend when M.D. was in his care. Mother proffers that was a "one-time incident." **See** Mother's brief at 16. The trial court also cited to an incident when Mother agreed to Father's vacation request to take M.D. to Mexico with twenty-two family members and then revoked her permission. Trial Court Memorandum, 8/12/19, at 3. Mother explains that she revoked her permission because she "had concerns about the child traveling outside the county." **See** Mother's brief at 16. Father had to obtain an order authorizing the vacation. Trial Court Memorandum, 8/12/19, at 3. We discern no abuse of discretion by the trial court in holding that Father is more likely to encourage and permit contact between M.D. and Mother pursuant to § 5328(a)(1).

In reference to § 5328(a)(3), the parental duties performed by each party on behalf of the child, the trial court determined that there "are some troubling issues with the competence of Mother's parenting and her failure to co-parent with Father." Trial Court Memorandum, 8/12/19, at 4. The trial court credited Father's testimony describing an incident where Mother brought M.D., wearing only a nightgown and shoes, to a custodial exchange in thirty-eight degree weather. N.T., 6/10/19, at 40. The trial court cited to testimony describing an incident that occurred when M.D. was four years old and Mother thought it was appropriate to allow M.D. to call Father and ask his permission to extend her time in Mother's custody because Mother did not "want to be the person telling her no." N.T., 6/11/19, at 245. Mother admitted that she

- 10 -

enrolled M.D. in therapy despite Father's objection, which the trial court concluded was an "improper display of unilateral legal custody decision-making." *Id*. at 205; Trial Court Memorandum, 8/12/19, at 5. Based on this record, and the well-settled principle that determinations regarding weight of the evidence are within the sole province of the trial court, we discern no abuse of discretion by the trial court in concluding that "[t]here was no evidence presented to indicate that Father cannot continue to perform parental duties." *Id*.

Regarding § 5328(a)(4), the need for stability and continuity in the child's education, family life, and community life, the trial court found that "stability and continuity in the child's life can best be maintained with Father enjoying primary custody and Mother enjoying alternating weekends with evening custody in the off week." Trial Court Memorandum, 8/12/19, at 5. The trial court noted that Mother intended to move to Zelienople, Butler County, and placed weight on the fact that M.D.'s "education will not be impacted by a change in primary [physical] custody." *Id*. As the trial court's conclusion that Father is better able to provide stability and continuity for M.D. is reasonable, we do not disturb the trial court's findings.

With respect to § 5328(a)(8), the attempts of a parent to turn the child against the other parent, the trial court unequivocally stated that "Mother has attempted to turn [M.D.] against Father in a consistent pattern, the cumulative effect of which is not known." Trial Court Memorandum, 8/12/19, at 6. The testimony of the court-appointed custody evaluator, Dr. Pepe, supports the court's finding. Preliminarily, Dr. Pepe described parental alienation as the "psychological manipulation of a child into showing unwanted

fear, disrespect or hostility toward a parent or other family members." N.T., 6/11/19, at 29. Her report indicated that M.D. "feels as if her mother tries to make her not like her father. . . ." N.T., 6/11/19, at 19. Dr. Pepe added that M.D. "spontaneously expressed, 'when I am with mommy, I feel like I don't like daddy, but when I am with daddy, I like daddy.'" ***Id***. Dr. Pepe explained that when a child makes a statement of that sort, "they're being influenced by the parent." ***Id***. Ultimately, she expressed a belief that Mother made "every attempt" to engage in parental alienation "by the comments that she made to the child and what the child said. [M.D.] wanting to please her mother, her repeatedly saying her mother doesn't like her daddy." N.T., 6/11/19, at 29. Notably, Dr. Pepe explained:

> . . .[Mother] is setting a dangerous precedent to alienate [M.D.] from her father, and it's unacceptable as appropriate parenting and potentially a current or future danger for [M.D.'s] safety both psychologically and physically. And much of the literature on parental alienation talks about the negative impact that it has on children, both presently and in the future.

N.T., 6/11/19, at 35. Dr. Pepe opined that "although [M.D.] was not at the point yet where she refused to visit her father, I mean, I could see that occurring at some point with this behavior continuing." N.T., 6/11/19, at 30. For all of these reasons, the certified record supports the trial court's decision with respect to § 5328(a)(8).

Mother's argument also challenges what she characterizes as the trial court's insincere application of the custody factors. ***See*** Mother's brief at 23 ("The Court cannot simply play[sic] lip service to the [custody] factors[.]"). The crux of this assertion is that, while the trial court listed every statutory

factor and summarized select evidence that supported its conclusion, the court neglected to discuss the remaining evidence in detail. *Id*. at 23-24. This claim fails. It is beyond peradventure that "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those consideration." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super.2013).

Most notably, of the sixteen custody factors, the trial court determined that none is positive for Mother, and, as such, the evidence weighed heavily in favor of Father exercising primary physical and legal custody. Trial Court Memorandum, 8/12/19, at 9. Upon review, the testimony supports the trial court's findings. The trial court weighed the entirety of the § 5328(a) factors in making the custody determination and articulated its considerations in a manner that informed the parties of the reasons for the custody award. Mindful of our limited standard of review, we decline Mother's implicit requests to revisit the trial court's credibility determinations and findings of fact that are supported by the record in order to reassess the weight of the evidence in her favor. *Id*. at 334 ("We must accept findings of the trial court that are supported by competent evidence of record....Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record."). As we must defer to the trial court on issues of credibility and weight of the evidence, and our review of the certified record confirms the trial court's conclusions, we discern no basis to disturb its custody decision based upon Mother's contrary evidence.

Mother next asserts that the trial court abused its discretion in limiting Mother's vacation periods to one week of domestic travel with M.D. only.

Specifically, Mother contends that this is "an impermissible restriction on Mother's custodial periods, particularly as the [trial court] made no findings, nor gave any rationale for this restriction, nor made a finding that the absence of the restriction will have a detrimental impact on the child." Mother's brief at 25.

The relevant provision provides:

> 6. Mother shall be entitled to one (1) week of domestic vacation with the child each summer. She shall notify Father of her selected dates by May 15th of each year. This Order does not authorize international travel. In order for Mother to travel internationally with the child, Father must consent to the same.

Order, 8/12/19, at ¶ 6.

In essence, Mother asserts that there was not a clear demonstration that this restriction on her custodial periods was necessary or in M.D.'s best interests. We disagree. In light of our deferential standard of review in custody matters generally and mindful of both parents' ability to petition the trial court to modify the vacation arrangement if it is unwieldy in application or susceptible to abuse, we discern no basis to disturb the custody order.

Next, Mother contends that the trial court erred in requiring Mother to obtain an independent psychological evaluation, attend parenting classes, and pay Father's counsel fees in the amount of $750.00. Preliminarily, we observe that the argument relating to the required parenting classes is waived because Mother neglected to present any supporting legal argument in her brief. *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or

fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). We address the remaining arguments *seriatim*.

As it relates to the mental health evaluation, Mother argues that the trial court cannot "order [her] to disclose her private mental health records" in an attempt "to obtain information from the back door that cannot be obtained from the front." Mother's brief at 27. Again, we disagree.

In rejecting Mother's assertion, the trial court endorsed Dr. Pepe's conclusion that "[M.D.] has tremendous confusion about her family" and that "Mother's behavior can be improved with counseling to better understand the effect of her actions on [M.D.]." Trial Court Memorandum, 8/12/19, at 7. Specifically, Dr. Pepe recommended that Mother participate in outpatient psychotherapy, and that Mother and M.D. participate in family therapy to help Mother provide alternative parenting techniques. She also recommended the parties undergo new evaluations in six months. N.T., 6/11/19, at 38-39. With respect to the trial court's order directing Mother to undergo an independent psychological evaluation and attend parenting classes, the trial court reiterated that:

> [S]everal of the custody factors discussed in [its] Memorandum that were negative for Mother could be addressed by Mother's participation in a parenting class. And, given Mother's history of mental health concerns, and absence of a second opinion regarding the same….[the trial court] is justified in ordering Mother to obtain an independent evaluation to better inform [the trial court] on the current status of Mother's mental health.

Trial Court Opinion, 10/11/19, at 12.

Our rules of civil procedure provide for court-ordered physical and mental examinations of children or parties in actions for custody or visitation. **See** Pa.R.C.P. 1915.8. Contrary to Mother's assertion, Rule 1915.8 does not empower trial courts to compel parties to disclose their confidential information to their opponents. As we explained in **Gates v. Gates**, 967 A.2d 1024 (Pa.Super. 2009), court-ordered mental health evaluations are the preferred method of determining whether a person's mental health problems would affect their child's best interest.

Hence, the trial court did not err in ordering an updated psychological evaluation pursuant to Rule 1915.8 to specifically address Mother's current mental health status as it relates to her parenting and care of M.D. **See** Trial Court Opinion, 10/11/19, at 12. We highlight that since the court-ordered psychological evaluation is the least intrusive means to determine how a parent's mental health condition will affect a child's best interest, it is the preferred method. **See Zane v. Friends Hospital,** 836 A.2d 25 (Pa. 2003); **Gates**, **supra.**

Finally, we reject Mother's challenge to the trial court's decision to award Father $750.00 in counsel fees. **A.L.–S. v. B.S.**, 117 A.3d 352, 361 (Pa.Super. 2015). Our child custody statute provides that a court "may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S. § 5339.

Instantly, the trial court determined that "Mother acted in bad faith when she informed Father that he would not be able to exercise his properly noticed vacation time because she had already made plans, for which she did

not properly provide notice to Father, and for which he had to seek [the trial court's] intervention." Trial Court Memorandum, 8/12/19, at 15; Trial Court Opinion, 10/11/19, at 13-14. Stated plainly, the trial court could no longer countenance Mother's recalcitrance. Accordingly, we find that it was within the trial court's discretion to conclude that the imposition of counsel fees was appropriate.

For all of the forgoing reasons, we affirm the order.

Order affirmed. Motion to quash denied.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2020