J-A35015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.S.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.J.S., | |
| Appellant | No. 850 WDA 2014 |

Appeal from the Order April 23, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 10-007983-008

BEFORE:  BENDER, P.J.E., BOWES, J., and DONOHUE, J.

MEMORANDUM BY BENDER, P.J.E.:        **FILED JANUARY 20, 2015**

M.J.S. ("Father") appeals from the custody order dated April 23, 2014, that was entered after two trials were held and an appeal was undertaken to decide the custody issues involving Father's and J.S.S.'s ("Mother") three children:  C.S. ( born in April of 1997), A.S. (born in March of 2000), and T.S. (born in November of 2004) (collectively "Children").  After review, we affirm.

This Court in Father's previous appeal set forth the following history of this case, stating:

> Mother and Father were married on July 22, 1995, and separated on April 5, 2010.  Following an unsuccessful attempt to mediate their custody issues, Father filed a Complaint for Primary Physical Custody of the Children on July 22, 2010. Generations Education and Mediation programs were scheduled. On July 23, 2010, Mother filed a Complaint in Divorce, along with a counterclaim for primary physical custody of the Children.

Father filed a Motion for Interim Custody in August 2010 in an attempt to obtain shared physical custody, which was denied. The parties then commenced co-parenting counseling … and entered into an agreement for a shared custody schedule on a short[-]term basis. As the custody issue was not resolved by this agreement, the trial court ordered [a] psychological evaluation to be conducted by Dr. Eric Bernstein in January of 2011. Upon completion of the psychological evaluation, a judicial conciliation was scheduled for April 6, 2011, but later rescheduled for March 28, 2011.

Father filed a second Petition for Interim Custody. Pursuant to the recommendation of Dr. Bernstein, an Interim Custody Order was entered on March 15, 2011. Due to the fact that the parties could not determine a holiday custody schedule, the trial court entered another Interim Order on March 28, 2011, vacating all prior orders and reiterating the terms of the March 15, 2011 order and adding additional provisions regarding co-parenting counseling, holidays, and vacations. As the parties were still unable to reach an agreement as to holidays, the trial court entered an order on April 13, 2011, outlining a holiday custody schedule. The trial court scheduled a pre-trial conference for July 26, 2011. Father filed motions to obtain compliance with vacation provisions, as well as to allow the younger Children to attend the eldest child's confirmation, which were granted by the trial court.

On August 18, 2011, the trial court scheduled a three-day trial for November 7, 15, and 29, 2011. The trial actually occurred on November 7, 15, 22, 23, and December 19, and 21, 2011. An updated psychological evaluation was conducted during this time period.

Following the custody trial, the trial court entered a custody order on January 18, 2012, outlining Mother's and Father's custodial periods for 2012, 2013, and 2014.[1] On February 1, 2012, Mother filed a Motion for Reconsideration of the January 18, 2012 custody order. The trial court granted

_____

[1] The January 18, 2012 order provided generally that the parties would have joint legal custody and that by 2014 they would have an equally shared physical custody arrangement without further review by the court.

Mother's Motion for Reconsideration in part to allow for a review hearing before implementation of the trial court's 2013 and 2014 physical custody schedule in conjunction with a new psychological evaluation. A review hearing was set for November 19, 2012, and the trial court ordered an updated psychological evaluation to be completed before the review hearing. Hearings were held on November 19, and December 5, 2012. The custody matter was not completed, and, on December 6, 2012, the trial court stayed the January 18, 2012 custody order relating to the increased custody provisions for 2013 and 2014.

Following the stay, Father allegedly engaged in various threatening conduct towards Mother, and she requested an order of no-contact, which was granted on an interim basis on December 18, 2012. Father filed a Petition for Protection from Abuse ("PFA") on December 27, 2012, and the trial court dismissed Father's PFA petition on January 13, 2013. On February 5, 2013, the trial court granted Mother counsel fees, reasoning that Father had filed his PFA petition in bad faith.

The custody proceedings resumed on March 8, and March 11, 2013. By order dated March 14, 2013, and entered on March 18, 2013, the trial court made the physical custody provisions of primary physical custody to Mother and partial physical custody to Father, and shared legal custody to both parties as listed in the January 18, 2012 order permanent.

*J.S.S. v. M.J.S.*, No. 641 WDA 2013, unpublished memorandum at 1-4 (Pa. Super. filed February 11, 2014) (*J.S.S. I*).

To further provide a factual background for this case, we include a portion of the trial court's opinion, dated May 23, 2013, which was written in conjunction with Father's initial appeal to this Court, *i.e.*, *J.S.S. I*. The trial court stated:

During the marriage, Father travelled regularly for his career and was often away from the family for all but weekends, leaving the day-to-day care of the children to Mother. The parties separated in 2010. Both parties filed for primary custody of the children.

- 3 -

The parties were unable to negotiate an acceptable schedule and, ultimately, a trial was scheduled.

I entered a custody Order on January 18, 2012, after five days of trial. I ordered the parties would share legal custody of their three children except for certain medical issues. With regard to physical custody, Father would enjoy partial custody every other weekend. On non-custodial weeks, he would have the boys for two weeknights and his daughter, [A.S.], for one night. Father's custody time was to gradually increase over a period of two years until the parties would ultimately share physical custody. I ordered reunification therapy for Father and daughter, [A.S.], and individual counseling for [A.S.].

I arrived at this scheme very deliberately in order to give Father time to gradually build his relationship with his children, especially with [A.S.]. Based on all the testimony, it was clear to me that the relationship between Father and daughter was very fragile and filled with contention, in great part due to Father's rigidity with regard to what he saw as "his time" with the children. Any contact [A.S.] had with Mother … during "his time" was perceived by Father as purposeful interference by Mother and belligerence by daughter and resulted in various punishments for [A.S.] which served to increase her strife with Father.

As noted, Father, who has a demanding career, had not been actively involved in the day to day lives of his children during the parties' marriage but was determined to be so after the parties separated. While this is commendable, Father did not seem to recognize the need to take the time to allow his children to become accustomed to his new role. Mother was not faultless in this process, in my opinion. My concern, however, was not who to blame but how to bring the parties closer together without further stressing a clearly upset young girl. It was my hope that Father and daughter, through therapy and time, could gradually repair their relationship.

After the trial, both parties filed motions for reconsideration and clarification. Mother asked that she be permitted to petition the court for a review of the custody situation, including updated psychological evaluations, before Father's increased custody went into effect. I granted that portion of her Motion on February 1, 2012, as I felt it was warranted. I do not, as a rule,

desire to put families and children through additional litigation, but, in this case, [I] was troubled by [A.S.'s] distress and by the general inability of these parties to agree on even the simplest aspects of their custody arrangements. The complete inability of the parents to co-parent on even the simplest level, despite their intelligence, education and social standing, was troubling. If that pattern of behavior could not improve, I deemed a review to be appropriate to determine if custody should be increased.

Accordingly, a one[-]day review was scheduled for November 19, 2012. When it was learned that the psychologist who performed the evaluations, Dr. Bernstein, was not available, a separate half day was scheduled for him to testify on December 5, 2012. The case did not conclude on that date for a number of reasons, not the least of which was Father's late arrival on December 5, after his insistence that he be allowed to testify first that morning, prior to Dr. Bernstein. Because Father had insisted on testifying first, Dr. Bernstein was not in the courtroom to testify when the case was scheduled to begin. An additional day was ultimately set aside for this review at the earliest possible day on my calendar, which was March 8, 2013.

Because the review was not complete, I entered an Order dated December 6, 2012[,] which stayed the implementation of the increasing custody for Father which was to begin on January 1, 2013. In Paragraph 26 of his Statement, Father complains that this Order was entered without "notice, presentation, argument, hearing or response or otherwise in consideration of Father's position." Contrary to this assertion, Father and his counsel were in court when Mother's counsel presented the proposed Order. Father's counsel requested a specific amount of time to provide this Court with their own proposed order, to which I agreed. Father did not provide that order. The statement, at Paragraph 25 of the Statement[,] that the Order was entered "suddenly[,]" is contrary to the statement of Father's counsel at the hearing on March 8, 2013 (3/8/13 TR p 252-255) acknowledging Father was to send his own proposed interim order.

Father's counsel withdrew her representation of Father and on March 8, 2013, Father proceeded *pro se*. The review still did not

conclude and an additional hearing was held on March 11, 2013, concluding the review. On March 14, 2013, I entered the order which is the subject of this appeal.[2]

Much like the custody trial, Father spent most of his time in this review pointing out what he saw as Mother's faults, rather than focusing on the needs and best interests of his children. On the other hand, Mother expressed credible concern with supporting testimony and evidence about Father's continuing and escalating problems with his daughter, and daughter's increasing distress. (11/19/12 TR p 17 - 30). Mother's testimony demonstrated to me that it was the best interest of her children which was in the forefront of her mind. (3/8/13 TR p 20). Mother's expression of concern for her children was seen by Father as Mother['s] attempting to profit economically through having more custody. (3/8/13 TR p. 195-199). My interview with the children on November 19, 2012 clearly indicated that Father's behavior, and therefore the children's relationship with him had deteriorated.

Father himself exhibited a demeanor in the courtroom that I found inappropriate. He used terminology that I found disturbing, such as his use of the term "self-help" (3/11/13 TR p 126-127), "hostage taking" (3/11/13 TR p 56), and his statements to Mother that this would [] "all be over soon" (3/11/13 TR p 157). Though prompted often from the bench to introduce evidence which would demonstrate the appropriateness of an increase in his custody time, Father insisted on trying to put on his case through Mother. He focused only on behavior from the time period prior to the first hearing (3/11/13 TR p 57-59), and presented me with voluminous and unhelpful trial aids which he felt would demonstrate a conspiracy between Mother and her counsel - and this court - to deprive him of custody time.

Ultimately, Father expressed his belief that the entire conduct of the case was somehow suspect. As proof, he referred to a letter from his former counsel wherein she notes that the case was erroneously listed on a filing receipt as being in front of a judge other than me. Father states that Mother's counsel "switched"

---

[2] The March 14, 2013 order is the order from which Father appealed in **J.S.S. I**.

> the case to my docket. (3/11/13 TR p. 95-97). Father's trial aid states[,] "Dad will always wonder why Judge Marmo isn't involved."
>
> Based on the evidence before me, and my observation of the parties and their children, I rightly found that an increase in Father's custody time would be detrimental to the children. As the best interests of the children is the primary concern in the formulation of a custody order, my March 14, 2013 Order should be affirmed.

Trial Court Opinion, 5/23/13, at 2-5 (unnumbered; footnotes omitted).

On April 12, 2013, Father filed an appeal with this Court from the March 14, 2013 custody order, which was entered on the docket on March 18, 2013. Upon review, this Court vacated the custody order and remanded the matter for the trial court to "expressly consider all of the section 5328(a) best interests factors in arriving at its custody decision…." *J.S.S. I* at 8. *See* 23 Pa.C.S. § 5328(a); *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (stating "[**a**]**ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order") (emphasis in original). The trial court responded by submitting an opinion that contained discussion regarding all sixteen custody factors. *See* Trial Court Opinion, 3/6/14. In that opinion, the trial court noted its recognition that it had not included a discussion of the sixteen factors in its opinion filed in conjunction with Father's April 12, 2013 appeal. The court stated, however, that since its "analysis had not changed between the original January 18, 2012 Order and the March 14, 2013 Order[,]" it believed it was unnecessary

to repeat its original analysis, which had included a discussion of the sixteen factors. *Id.* at 2.

Following the issuance of the trial court's opinion, Father filed a Petition to Confirm Custody—Reinstate Custody Order of January 18, 2012. Mother responded and on April 23, 2014, the trial court ordered the denial of Father's petition, reinstating its March 14, 2013 order. Father then filed a timely appeal from the April 23, 2014 order. In essence, however, the issues raised in this instant appeal relate to the trial court's March 18, 2013 custody order.

Father raises the following nine issues for our review:

1. Whether the trial court committed an error of law or abuse of discretion in finding that Father was not entitled to the expanded custodial time as outlined in the original Custody Order entered January 18, 2012[?]

2. Whether the trial court committed an error of law or abuse of discretion in finding that the parties daughter, [A.S.], was harmed by spending more time with Father when there was no evidence from the Court appointed psychologist or otherwise to support this finding[?]

3. Whether the trial court erred in not considering its own admission that Mother is equally culpable in failing to cooperate with Father[?]

4. Whether the trial court committed an error of law or abused its discretion in drawing a negative inference from Father's withholding of consent to release records of [A.S.'s] treatment with Dr. Wollman, a practitioner who clearly made abhorrent mistakes in [the] treatment of [A.S.] to Father's detriment and indicated in casual statements her bias against Father[?]

5. Whether the trial court committed an error of law or abused its discretion in granting Mother legal custody, especially with regard to the parties' son, [C.S.], who has a unique masculine-

- 8 -

related medical condition where he would especially need his Father's involvement[?]

6. Whether the trial court committed an error of law or abused its discretion by the scheduling of a review hearing back in February 2012 yet not to be held until November 2012 prior to implementation of her expanded schedule, as such review hearing essentially invited and incentivized Mother to sabotage the implementation of the Custody Order in every way possible[?]

7. Whether the trial court committed an error of law or abused its discretion by precluding appeal or review of this matter in almost three years of proceedings by dangling the concept of shared custody before Father, but indulging continuances, review hearings, stays and ultimately vacating all prior orders, eliminating such shared custody time[?]

8. Whether the trial court committed an error of law or abused its discretion in separating siblings in the custodial schedule[?]

9. Whether the trial court erred as a matter of law and abused its discretion by entering a "no contact" order enforceable by the police as an Interim Order between the second and third days of the review hearings as this perpetuated a highly prejudicial environment to Father and, more significantly, circumvented his constitutional rights under the PFA statute[?]

Father's brief at 7-8.

With regard to custody matters, our scope and standard of review are

as follows:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the

trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)). Furthermore, we note that:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.
>
> *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

*A.H. v. C.M.*, 58 A.3d 823, 825 (Pa. Super. 2012).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

Father first argues that the court abused its discretion by refusing to expand his time with the Children. He contends that nothing had changed since the January 18, 2012 order was entered that should have resulted in the court's refusal to order an equal custody arrangement. Father particularly mentions the court's reliance on the difficulties the parties have

had communicating with each other. Because this had not changed, Father claims that the court's reliance on this factor was in error in that "the parties' less-than-'minimal' communication is not supported by the evidence." Father's brief at 23. To support his argument, Father relies on **B.C.S. v. J.A.S.**, 994 A.2d 600 (Pa. Super. 2010), which provides:

Shared custody in Pennsylvania is governed by 23 Pa.C.S. § 5304:

**§ 5304. Award of shared custody**

An order for shared custody may be awarded by the court when it is in the best interest of the child:

(1) upon application of one or both parents;
(2) when the parties have agreed to an award of shared custody; or
(3) in the discretion of the court.

23 Pa.C.S. § 5304. In **Wiseman v. Wall**, 718 A.2d 844 (Pa. Super. 1998), this Court identified factors the trial court is required to consider:

Among the factors which must be considered in awarding shared custody are the following: (1) both parents must be fit, capable of making reasonable child rearing decisions and willing and able to provide love and care for their children; (2) both parents must evidence a continuing desire for active involvement in the child's life; (3) both parents must be recognized by the child as a source of security and love; (4) a minimal degree of cooperation between the parents must be possible.

**Id.** at 848; **see also In re Wesley J. K.**, 299 Pa. Super. 504, 445 A.2d 1243, 1248-49 (Pa. Super. 1982). A minimal degree of cooperation does not

translate into a requirement that the parents have an amicable relationship. Although such a positive

- 11 -

> relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor.

*In re Wesley J. K.*, 445 A.2d at 1249 (citation omitted).

*B.C.S.*, 994 A.2d at 602-03. Consequently, based on this discussion in *B.C.S.*, Father asserts that this Court has not mandated that an amicable relationship between the parents is a prerequisite for shared custody. Rather, he contends that his and Mother's "minimal" communication is adequate to support shared custody. Father's brief at 25. Moreover, Father asserts that the court's current custody schedule does not meet the Children's best interests, but sends a message "that Father [is] a 'less than' parent[.]" *Id.* at 26.

Father overlooks the reasoning behind this Court's reversal of the order on appeal in *B.C.S.* The trial court in *B.C.S.* denied the father's petition for shared custody based upon a personal, mistaken belief that the parties must "really [be] able to work well together and talk to each other frequently … and be civil and cordial…." *B.C.S.*, 994 A.2d at 603. Since that does "not comport with well-established precedent[,]" we vacated the trial court's order and remanded for further proceedings. *Id.* (citing *In re Wesley J.K.*, 445 A.2d 1243, 1249 (Pa. Super. 1982)).

Here, the court focused on the best interests of the Children and, in part, relied on their opinions, namely, that they preferred being in Mother's

care and that they had "some fear of their Father[.]" Trial Court Opinion, 3/6/14, at 4. The court also noted that the Children felt Father "to be untruthful, … that he tried to convince them their Mother did not want them, … [and] that Father pushes A.S.'s buttons and that he was irrational." *Id.* (internal quotation marks omitted). The court further indicated that:

> While it was clear to me that the [C]hildren love their Father, it was equally clear that they are more comfortable in their Mother's care and that A.S. does not *think* she loves her Father. She, in particular, has a damaged and complicated relationship with her Father that I hoped he would give [A.S.] care and time to heal. Instead, there were numerous examples presented wherein he caused her unneeded stress. He was unwilling to focus on rebuilding his relationship with her so it could continue into the future and instead focused on forcibly imposing his will on her in a fashion virtually guaranteed to further alienate them from each other.

*Id.* at 5. Simply stated, Father's allegations that the court's findings are not supported by the evidence are incorrect. Father appears to be requesting that this Court re-find and/or re-weigh the evidence. However, as stated above, our standard of review requires that we "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." *C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). Therefore, we conclude that Father's first issue is without merit.

Likewise, Father's second argument, which centers on A.S. and her relationship with Father, again would require that this Court revise the trial court's findings in that he claims there is no support in the record for those

findings. Father relies on Dr. Bernstein's testimony, citing a section of it that indicates an equal custody arrangement may lessen the tension between Mother and Father. **See** Father's brief at 29. Father does acknowledge that Dr. Bernstein is not necessarily suggesting shared custody, *i.e.*, changing the existing custody schedule, but Father questions whether an increase of four more days per month could be "greatly disrupt[ive....]" **Id.** Father's argument appears to suggest that four days less custody per month creates the problems, but that four days more would "stop the bleeding." **Id.** at 30. Again, we conclude that Father's argument rests on an attack on the trial court's findings, which are based on its credibility determinations to which we defer. Again, we conclude that Father is not entitled to relief.

Father's third issue references Mother's request for reconsideration of the January 2012 order that would have expanded Father's custody over the next two years to reach equal, shared custody. Father accuses the court of creating hostility between the parties when it granted Mother's reconsideration request, thus, giving "Mother the incentive to prevent Father from obtaining his expanded time in advance." **Id.** at 31. He complains that Mother then could "sabotage and thwart all [his] attempts … to prove himself to the court that he was worthy of additional custodial time." **Id.** Father also contends that the continuing litigation had a "deleterious effect" on the Children because the custody issues went unresolved, a fact Father claims the Children blamed on him. To support this argument Father

identifies testimony presented by himself, Dr. Bernstein, Mother, A.S., and Father's sister, discussing what each witness stated and concluding that "the court effectively 'sanctioned' Father" when it refused to reinstate the prior shared custody award. *Id.* at 37. Father provides no citation to authority and overlooks this Court's inability to make factual determinations that contradict the trial court's findings, which are supported by the evidence of record. This argument is also without merit.

Father's fourth issue involves his refusal to consent to the release of A.S.'s records of her treatment with Dr. Wollman, who Father contends is biased against him and made mistakes in her treatment of A.S. Father claims that the trial court drew a negative inference from his refusal to consent to the release and that, therefore, the custody order should be reversed.

In response to this issue, Mother contends that the cases cited by Father are not applicable to the situation before this Court in that those cases discuss the confidentiality of mental health records. *See e.g., Gates v. Gates*, 967 A.2d 1024 (Pa. Super. 2009) (reversing trial court's finding a mother in contempt for refusing to release her confidential mental health records in the context of a custody action). Rather, Mother asserts that Father's concern was not the confidentiality of A.S.'s records of her treatment, but that his refusal was an attempt to block any biased statements about him that he believed Dr. Wollman would make.

In its May 23, 2013 opinion, the trial court addressed this issue as follows:

> Dr. Wollman made a comment regarding Father which indicted that she may have harbored a bias against Father. However, there is actually no way for me or Dr. Bernstein to know if she made "abhorrent mistakes" as Father states without seeing the records. I found that Father's failure to consent to the release of those records to Dr. Bernstein demonstrated that he was not seeking to get information that might have assisted the psychologist, me, and, most importantly, himself, in reaching a better understanding of his daughter.
>
> I was disturbed by Father's failure to sign the release. Any inference I drew from Father's refusal to release Dr. Wollman's records, however, had no [a]ffect whatsoever on my decision to not implement increased custody time for Father. I did not increase Father's custody time because I do not believe it would be in the best interest of his [C]hildren to do so, based on all of the evidence before me.

Trial Court Opinion, 5/23/13, at 8. Father's argument has failed to persuade us otherwise. Therefore, we do not conclude that the trial court abused its discretion.

In his fifth issue, Father asserts that the court's assigning limited legal custody of C.S. to Mother, in regard to C.S.'s medical condition for which he receives injections, is an abuse of discretion. Specifically, the March 14, 2013 order provided joint legal custody of the Children, but added that if the parties could not agree "as to the course of [m]edical [t]reatment, including the selection of the professional provider, Mother's determination shall prevail." Trial Court Order, 3/14/13, at 2. The order also directed that Mother schedule the Children's medical appointments with notice to Father

so that he can attend the appointments. Father believes he should be a part of the decision making process, relying on **Hill v. Hill**, 619 A.2d 1086 (Pa. Super. 1993). The **Hill** case concerned a situation in which the parents were awarded shared legal custody, but "[i]n the event of disagreement, [m]other's preference [would] prevail." **Id.** at 1088. On appeal, this Court held that the trial court had given "the father authority in name only and deprived him of a legal remedy because he was already awarded 'share legal custody.'" **Id.** at 1088. We further stated that "the concept of shared legal custody does not contain the principle of giving one parent final authority in the event of a dispute." **Id.** at 1089 (relying on **In re Wesley J.K.**, 445 A.2d 1243 (Pa. Super. 1982)).

In response to this claim of error, the trial court explained:

The evidence presented regarding medical treatment demonstrated to me that Father is more concerned with interfering and exercising control over the scheduling of appointments for the [C]hildren than he is in making sure that they get appropriate treatment. He arbitrarily cancelled appointments scheduled by Mother for times when the [C]hildren would not miss school, rescheduled them for times when the [C]hildren would miss school, and then failed to attend those appointments and Mother took the [C]hildren. With regard to [C.S.], Father demonstrated no basis for his objections to the treatment plan of his son's doctor; his objections were arbitrary. He did not seek a second opinion, merely demanded that nothing be done without his "consent." It is imperative that this young man receive regular and monitored care and it was my determination that Father's demands that nothing be done without his "consent" is not based on anything but his struggle

for power. This behavior was repeated regarding the younger boy's dermatological treatment.

Trial Court Opinion, 5/23/13, at 9 (unnumbered).[3]

Although we recognize that Father's reliance on the holding in *Hill* is persuasive, we conclude that the *Hill* case is distinguishable from the present circumstances. In *Hill*, the "final decision-making power" awarded the mother covered every decision that could arise; it was not just limited to medical treatment decisions as is the situation here. The *Hill* court also noted that the trial court had not made on the record findings about the parents' ability to at least minimally cooperate. Here, the trial court provided extensive findings on the lack of cooperation between Mother and Father, particularly as it related to the medical treatment of the Children, not just decisions in general. Therefore, we conclude that in light of the parties' inability to cooperate, as found by the trial court, the limited exception to an equally shared custody arrangement, regarding the medical treatment of all three Children, is not an abuse of discretion. *Hill* does not control under these circumstances.

Father's sixth claim of error involves Pa.R.C.P. 1915.4, entitled "Prompt Disposition of Custody Cases," which in pertinent part provides:

---

[3] Father also argues that Mother's father, who is a physician, should not be treating the Children. Father did not raise this issue in his Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal, therefore, we deem this issue waived. *See* Rule 1925(b)(4)(vii).

> **(c) Trial.** Trials before a judge shall commence within 90 days of the date the scheduling order is entered. Trials and hearing shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

Pa.R.C.P. 1915.4(c).

Father claims that this rule was violated because he had filed the custody action in July of 2010 and the final order was not entered until March of 2013, almost three years later. Father also states that the "review hearing" held in November of 2012 was unnecessary and was not completed until March of 2013. He sets forth an extensive discussion of the procedural history of this matter, and claims that Mother and the trial court were the cause of the various delays that prejudiced both him and the Children.

We are compelled to conclude that this issue has been waived because it was not raised in the court below. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). **See also** Pa.R.A.P. 2117(c) ("issue is not reviewable on appeal unless raised or preserved below"); and Pa.R.A.P. 2119(e) (same). Furthermore, these rules require an appellant to identify where in the record the issue was raised below and Father has not done so.[4]

---

[4] We also note that Father's reliance on Pa.R.C.P. 1915.4(c) may be ill-advised in that the relief to which he may have been entitled could have resulted in a dismissal of his custody complaint pursuant to Pa.R.A.P. 1915.4(b). **See Dietrich v. Dietrich**, 923 A.2d 461 (Pa. Super. 2007).
*(Footnote Continued Next Page)*

In Father's seventh issue, he appears to assert that the court did not consider all the evidence in arriving at its custody order. Specifically, he contends that at the November 19, 2012 hearing, "after only having heard Mother's direct testimony and [half] of the [C]hildren's testimony in camera, the trial judge, in response to [A.S.'s] request to decrease the time spent with her father, boldly declared to her: 'I don't think we are going to go up in time.'" Father's brief at 51-52 (emphasis omitted). Based upon this single statement by the court, Father asserts that the court had "foreclosed further consideration of the issue, and that the remainder of the proceedings below were mere surplusage that need only be endured." *Id.* at 52.

Mother responds, pointing out that the court advised Father to provide evidence that supported his claim for shared custody. Rather than comply with the court's request, Mother contends that "Father spent most of his time … pointing out what he saw as Mother's faults, rather than focusing on the needs and best interests of his [C]hildren." Mother's brief at 44 (quoting Trial Court Opinion, 5/23/13, at 4 (unnumbered)). Mother also relies on a statement in this Court's memorandum issued in response to Father's appeal from the divorce decree. Noting that Father requests relief from this Court upon remand by directing that a different judge be appointed (Father's brief

*(Footnote Continued)* ———————————

Additionally, this dismissal would not necessarily have brought about the reinstatement of the January 2012 order, which we recognize is Father's goal.

- 20 -

at 60), Mother quotes a portion of this Court's prior decision in *[J.S.S.] v. [M.J.S.]*, No. 1214 WDA 2013, unpublished memorandum at 29, n.7 (Pa. Super. filed July 31, 2014), which addressed Father's implication that the trial court was biased against him. Mirroring what was stated in that decision, we suggest that if Father believed the court was biased then he should have petitioned for recusal. Implying bias without petitioning for recusal will not overcome Father's failure to present evidence supporting his claim for shared custody. Moreover, our review reveals that the court's comment to A.S. appeared to be an attempt to comfort her and was not an indication that the court had pre-judged the final outcome. Thus, we conclude that Father's seventh issue is without merit.

In Father's eighth issue, he contends that the trial court ignored Dr. Bernstein's recommendations and the guidance of well-settled case law when it ordered a custody schedule separating the siblings. Father provides more than six pages of discussion, setting forth various incidents that he believes give support to A.S.'s feelings of alienation from him. Father also extensively discusses Dr. Bernstein's opinion. However, Father does not explain that the schedule deviates by only two days per month, *i.e.*, A.S. spends one less overnight with her Father every two weeks than her brothers do.

In its opinion on remand, the trial court discussed this issue relating to Factor 6, listed in the Child Custody Act, 23 Pa.C.S. § 5328(a), stating:

> Since the children are together during most periods of custody and have no step-siblings, the considerations of Factor 6 regarding sibling relationship are met equally. A.S. spends an extra day with her Mother when her brothers are in Father's custody, I disagree with Father's assessment, which is somewhat reinforced by Dr. Rosenblum's [*sic*] testimony, that this arrangement gives A.S. some feeling of power to which she is not entitled. To the contrary, I carefully considered her vehemently expressed desire to not be with her Father, and determined that allowing A.S. one less day with Father might reassure her that she had some nominal say in her life. Instead of being patient[,] allowing his child to adjust and attempting to mend his relationship with her, Father dug in his heels and focused on what he thought he was entitled to, rather than considering his child's best interests.

Trial Court Opinion, 3/6/14, at 4 (unnumbered).

"[T]he policy in Pennsylvania is to permit siblings to be raised together, whenever possible (the doctrine of 'family unity' or 'whole family doctrine')." **Johns v. Cioci**, 865 A.2d 931, 942 (Pa. Super. 2004). "Absent compelling reasons to separate siblings, they should be reared in the same household to permit the 'continuity and stability necessary for a young child's development." **Id.** "However, this Court has made clear that the policy against separation of siblings is only one factor—and not a controlling factor—in the ultimate custody decision." **Id.** Under the circumstances here, we conclude that the court did not abuse its discretion in ordering this slight deviation from having the Children all spend the exact same amount of time with Father, as he requests. Father's argument does not convince us otherwise.

Father's final issue concerns the court's issuance of a no-contact order against him on December 18, 2012. He complains that the court had no authority to issue such an order and, therefore, it infringed on his "constitutional liberty interests in free speech and association without due process." Father's brief at 58-59. Father acknowledges that the order has since been vacated, but complains that he and the Children were subject to police involvement during the three-month period that the order remained in effect. Notably, Father does not explain what relief he seeks from this Court.

Mother directs this Court's attention to **Deutsche Bank Nat. Co. v. Butler**, 868 A.2d 574, 577 (Pa. Super. 2005), which provides that:

> "Generally, an actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable…. If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot." **J.S. v. Whetzel**, 860 A.2d 1112, 1118 (Pa. Super. 2004) (quotation marks and citation omitted). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." **In re Cain**, 527 Pa. 260, 590 A.2d 291, 292 (Pa. 1991). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **Rivera v. Pennsylvania Dept. of Corrections**, 837 A.2d 525, 527 (Pa. Super. 2003).

In response to this issue, we rely on the trial court's order dated March 14, 2013, that states that "[a]ll prior custody Orders in this matter as well as any Orders concerning communications between the parties are hereby superseded in their entireties. Certain provisions of these previous orders

are incorporated herein; however, this Order is controlling." Trial Court Order, 3/14/13, at ¶ 2. In light of the fact that the December 2012 order was vacated, we conclude that this issue is moot. We again conclude that Father is due no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2015