For the foregoing reasons, I concur only in the result reached by the Majority.

**M.M., Appellant**

v.

**L.M., Appellee.**

Superior Court of Pennsylvania.

Submitted June 25, 2012.

Filed Sept. 12, 2012.

Dawn K. Gull, Pittsburgh, for appellant.

Chrystal Ciampoli–Tinsman, Pittsburgh, for appellee.

* Retired Senior Judge assigned to the Superior Court.

1. *See Rhodes v. USAA Casualty Ins. Co.,* 21 A.3d 1253, 1258 (Pa.Super.2011) ("Generally, discovery orders involving purportedly privileged material are appealable because if immediate appellate review is not granted, the

BEFORE: BOWES, SHOGAN, and COLVILLE,* JJ.

OPINION BY BOWES, J.:

M.M. ("Father") appeals the order entered on November 7, 2011, wherein the trial court, *inter alia,* directed him to provide his mental health records to L.M. ("Mother") in anticipation of a custody trial concerning their minor daughter, H.M. We review this appeal pursuant to the collateral order doctrine codified at Pa. R.A.P. 313,[1] reverse the order in part, and remand for further proceedings.

Mother and Father married on May 25, 2008, and separated on February 20, 2010. Their separate divorce action is pending. On February 26, 2010, Mother filed a petition for protection from abuse ("PFA") on behalf of herself and her two children from a prior relationship. On March 5, 2010, Mother and Father entered a consent order, wherein Father agreed, *inter alia,* not to harass, stalk, or threaten Mother or her children. In addition, Father was excluded from the marital residence, Mother's workplace, and the children's daycare and school for one year.

During April 2010, following the parties' separation and consent decree, H.M. was born to the parties. Father immediately filed the present custody complaint seeking shared legal and physical custody of his daughter. The custody trial was continued several times and is pending. On April 15, 2010, the trial court entered an interim custody order awarding Mother primary physical custody and granting Father periods of partial physical custody on

disclosure of documents cannot be undone and subsequent appellate review would be rendered moot."); *Gormley v. Edgar,* 995 A.2d 1197 (Pa.Super.2010) (discovery order involving allegedly privileged mental health information is appealable collateral order to pursuant to Pa.R.A.P. 313).

every Saturday and Sunday from 10:00 am to 4:00 pm.

Father was diagnosed with bipolar personality disorder during 1998. He has had multiple hospitalizations due to his condition, and his mental health has been at issue throughout this custody litigation. Father has displayed violent behavior during several of the custody exchanges, including allegedly assaulting maternal grandfather and biting his ear during a May 2011 custody exchange in the parking lot of the Jewish Community Center in Pittsburgh. In light of the nature of this appeal, we highlight Father's alleged behaviors along with our recitation of the procedural history of this case.

As a result of a PFA that Mother filed against Father on May 11, 2010, the trial court temporarily suspended Father's custodial rights pursuant to a consent decree. When physical custody resumed during June 2010, Father's custody was limited to periods of supervised custody. Upon discovering that Father was hospitalized for mental health issues July 1, 2010 through July 5, 2010, Mother filed a petition for special relief seeking to suspend any custody. Thereafter, the parties entered a consent order that continued supervised custody and directed Father to execute a release of information for the trial court's *in camera* review. The release was specifically limited to records pertaining to Father's five-day hospitalization. On August 18, 2010, the trial court ordered Father to submit to a psychological evaluation.

Supervised custody continued until January 21, 2011, upon the completion of the court-ordered psychological evaluation. Following that evaluation, the trial court entered a revised custody arrangement wherein Father was granted unsupervised physical custody with his daughter every Tuesday and Thursday afternoon from 3:30 p.m. to 8:00 p.m. and daytime custody on Saturday and Sunday from 10:00 a.m.

to 3:00 p.m. on alternating weekends. The order also granted Father periods of overnight weekend custody effective after three months.

On April 11, 2011, Mother and Father continued the custody trial until June 21, 2011, so that Mother could depose Duane Spiker, M.D., Father's treating psychiatrist. As it relates to this appeal, the consent order provided "The parties agree that Father will provide a release to Dr. Spiker releasing specified information to Mother['s][and] Father's counsel on a monthly basis to ensure compliance with appointment and drug treatment via blood tests from the date forward." Custody Order, 4/11/11, at unnumbered page 2. This order also extended Father's periods of weekend daytime custody by three hours until 6:00 p.m., but it vacated the provision in the former order providing for Father's eventual assumption of overnight custody after three months. Although Father executed the contemplated release, Dr. Spiker's deposition never occurred.

Thereafter, on May 16, 2011, following the episode when Father allegedly bit the maternal grandfather's ear, the trial court directed that custody exchanges occur at the police station located in the Squirrel Hill section of Pittsburgh. Three days later, following Mother's emergency petition to reconsider, the trial court vacated its prior custody order and imposed periods of supervised physical custody pending the entry of a final custody order. On the same day, Father admitted himself into Western Psychiatric Institute and Clinic ("WPIC") and remained hospitalized voluntarily for one week.

In an order dated June 13, 2011 and entered July 15, 2011, the trial court further postponed the June 21, 2011 custody trial until September 19, 2011, so that Father could submit to an updated psychological evaluation "specifically addressing Fa-

ther's mental health status as it relate[s] to his [parenting and care of [H.M.] and his relationship with her." Trial Court Order, 7/15/11. Meanwhile, the trial court continued Father's period of supervised physical custody as outlined in the May 19, 2011 order.

Notwithstanding the trial court's entry of an order on August 8, 2011, to facilitate the updated psychological evaluation, the evaluation never occurred. Instead, on August 22, 2011, Mother presented a petition for special relief requesting, *inter alia*, that Father provide her with his mental health records concerning "the May hospitalization and post[-]hospitalization care[.]" Petition for Contempt and Special Relief, 11/7/11, at unnumbered page 4. Father objected to producing the privileged material for Mother's review, invoking a privacy interest in his mental health records, and reminded the trial court of the pending update to the psychological evaluation. Mother countered that Father waived any privilege that he might have had to his mental health records by agreeing to the deposition of his treating physician. Father responded that the May 2011 release was narrow in scope and limited to the specific purposes enumerated therein.

After taking the matter under advisement for two and one-half months, the trial court entered the November 7, 2011 order directing Father to produce the requested medical records within sixty days and awarding Mother counsel fees totaling $1,000. The order also directed Father to release medical records related to a prior automobile accident and to permit Mother to depose any medical expert that he intended to present during the custody trial. The trial court subsequently vacated the award of counsel fees but otherwise denied Father's petition for reconsideration. This timely appeal followed on December 5, 2011. Father complied with Pa.R.A.P.

1925(a)(2)(i) by filing a statement of errors complained of on appeal concurrent with his notice of appeal.

He presents the following questions for our review:

A. Whether the trial court erred in requiring Father to release directly to Mother his records of mental health treatment under current case and statutory law?

B. Whether the trial [c]ourt erred in requiring Father to release his mental health records directly to Mother, in contravention of the psychiatrist/patient privilege outlined in 42 Pa.C.S.A. § 5944?

C. Whether the trial [c]ourt erred in requiring Father to release directly to Mother his records of mental health treatment in contravention of the Health Information Portability and Accountability Act of 1996, and the Mental Health Procedures Act?

D. Whether the trial [c]ourt erred in requiring Father to release directly to Mother his records of mental health treatment when there was no immediately pending custody litigation at issue, and release of such records was not the least intrusive means of obtaining information regarding Father's mental health?

Father's brief at 4. Since Father's issues relate to the disclosure of his confidential mental health information and Father presents a single argument to support the four contentions, we address the issues collectively.

■ We recently reiterated the applicable scope and standard of review as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court

that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa.Super.2010) (internal citations omitted).

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super.2012).

At the outset, we observe that Father does not challenge those portions of the trial court's order that direct him to disclose his medical records associated with a previous car accident and permits Mother to depose any health care provider or medical expert that he intends to utilize at

trial. Accordingly, those portions of the discovery order are not before us.

*Gates v. Gates*, 967 A.2d 1024 (Pa.Super.2009), is the seminal case addressing the disclosure of confidential mental health information during custody proceedings. In *Gates*, we addressed the confidentiality provisions outlined in the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7111(a)[2] and the statutory privileges outlined in the Judicial Code, 42 Pa.C.S. § 5944,[3] regarding confidential communications to psychiatrists or licensed psychologists. In that venomous custody dispute involving a four-year-old child, the father filed a petition for special relief requesting the mother's mental health records associated with inpatient mental health treatment that she had recently completed. Following some procedural wrangling, the trial court found that the requested information was not privileged under § 5944 and that the mother had waived her privilege under the MHPA by her actions during the course of the custody proceedings. Specifically, the trial court reasoned that the mother (1) acknowledged the court's authority to order her to submit to a mental health evaluation pursuant to Pa.R.C.P. 1915.8; (2) failed to invoke the privilege at the first opportunity; and (3) previously

---

**2.** In pertinent part, the MHPA provides, as follows:

(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to section 110;

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

50 P.S. § 7111(a).

**3.** The provision of the Judicial Code concerning confidential communications to psychiatrists or licensed psychologists provides:

No psychiatrist or person who has been licensed under the [Professional Psychologists Practice Act] to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.

agreed to release certain mental health documents during 2005. Accordingly, the trial court entered an order directing the mother to execute a consent to release the requested records of her psychiatric treatment. The mother appealed, again invoking the psychotherapist-patient privilege and the confidentiality provisions in the MHPA. After granting *supersedeas*, we reversed the trial court's order.

In granting the relief the mother requested, we first observed that while the psychotherapist-patient privilege applied "only to confidential communications with psychiatrists or psychologists that were made in the course of treatment," which the father concededly had not requested, the confidentiality provision of the MHPA applied to all records concerning inpatient mental health treatment. *Id.* at 1029. Thereafter, we found that the record did not support the trial court's finding that the mother waived the statutory privilege of confidentiality under the MHPA.

As it related to the trial court's contention that the mother conceded to the court's authority to order her to disclose the privileged material, we reasoned that while Rule 1915.18 authorizes the trial court to order a party to custody litigation to submit to a mental health evaluation, the rule does not empower trial courts to compel parties to disclose their confidential information to their opponents. Accordingly, we found that the mother did not waive her privilege of confidentiality by acknowledging the trial court's authority to order her to submit to a psychological evaluation.

Next, in confronting the trial court's finding that the mother failed to invoke the MHPA privilege at the first opportunity, we concluded that the mother asserted a privacy privilege in response to Father's initial request for her most recent mental health records and maintained that position throughout the litigation of that issue.

We explained, "we cannot conclude that [the mother] has waived her claim that the mental health records are confidential simply because she did not cite the MHPA directly." *Id.* at 1031 (footnote omitted).

Finally, we rejected the trial court's rationale that the mother waived her privilege of confidentiality by agreeing to release certain medical documents during the parties' divorce proceedings in 2005 or by testifying as if on cross-examination about the December 2007 hospitalization generally. In disposing of these issues, we first found that the mother's prior consent to release certain documents did not bear upon the father's current request for her mental health records. We concluded, "Mother's consent to release her mental health records for a specific purpose three years ago did not vitiate the confidentiality of her most recent mental health records." *Id.* Next, we reasoned that even though the mother responded to the father's cross-examination of her regarding her recent hospitalization, including her diagnosis, medications, and the nature of her post-discharge therapy, the mother had continued to challenge Father's access to her mental health records before and after the hearing.

Essentially, we balanced the benefit of the mother's testimony during the brief cross-examination to the court's determination of whether she should be forced to disclose the remaining information that she was attempting to shield with the mother's privacy interest in her mental health records. We concluded that since the mother consistently objected to the disclosure before and after the impeachment, she did not waive her statutory privilege of confidentiality under the MHPA. *Id.* at 1032. In reaching our ultimate conclusion that the mother's mental health information was not subject to disclosure

under the facts of that case, we opined as follows:

[W]e acknowledge and cannot emphasize too strongly an expectation of confidentiality in mental health records is critical to effective mental health treatment. *Zane [v. Friends Hospital,* 575 Pa. 236, 836 A.2d 25 (2003) ]. As our Supreme Court stated in *Zane, supra:*

The importance of confidentiality cannot be overemphasized. To require the Hospital to disclose mental health records ... would not only violate [the] statutory guarantee of confidentiality, but would have a chilling effect on mental health treatment in general. The purpose of the Mental Health Procedures Act of seeking "to assure the availability of adequate treatment to persons who are mentally ill," 50 P.S. § 7102, would be severely crippled if a patient's records could be the subject of discovery in a panoply of possible legal proceedings.

*Id.* at [34].

Presuming Father's primary purpose in seeking the privileged documents was to ensure the existing custody order was in [his son's] best interest, we recognize that Father was entitled to place Mother's mental condition at issue in the custody proceedings. Nonetheless, less intrusive means exist for the trial court to make a determination as to Mother's suitability as a custodial parent, rather than releasing Mother's privileged mental-health records from her December 2007 hospitalization and vitiating her statutory right of confidentiality. For example, Father can utilize Mother's testimony from the March 28, 2008 hearing to attempt to sustain his burden of proving modification is warranted, and if further inquiry into Mother's mental health is necessary, the trial court can order Mother to submit to a psychological evaluation pursuant to Rule 1915.8.

However, Mother's mental health records are not subject to disclosure.

*Id.* at 1032.

As it related to the father's protestation that our Supreme Court's rationale in *Zane* was not applicable in custody cases where the paramount consideration was always the child's best interest, we further explained,

[W]e conclude the MHPA is equally applicable in a custody dispute as it is in a civil matter. We hold so especially where, as here, less intrusive alternatives exist to determine the effect of a party's mental health upon the child's best interest. *See T.B. v. L.R.M.,* 874 A.2d 34, 38 (Pa.Super.2005) ("while psychiatric considerations may very well be important, they must not be made determinative, for in deciding upon a child's best interest[,] the court must take many factors into account.").

*Id.*

Herein, the trial court found that our holding and expression of rationale in *Gates* was distinguishable from the case at bar due to the concern the trial court had with Father's mental health condition and because Father did not consistently assert that his mental health records were privileged. *See* Trial Court Opinion, 2/10/12, at 12–13. Essentially, the trial court concluded that Father vitiated the confidentiality of his mental health records concerning the voluntary inpatient treatment he received during May 2011 by submitting to the court-ordered psychological evaluation in 2010, consenting to the deposition of his treating psychiatrist, and authorizing the release of specific information on a monthly basis to ensure his compliance with appointments and drug treatment. *Id.* at 12–13.

Father challenges the trial court's rationale on multiple fronts. First, Father contends that the alleged severity of his bipo-

lar personality disorder is irrelevant to the determination of whether he should be compelled to disclose his privileged mental health information. Next, he argues that although Mother was entitled to place his mental health at issue, her concerns could be addressed by the court-ordered psychological evaluations. Finally, Father maintains that he never waived his privacy privileges during the course of the custody litigation by submitting to the court-ordered psychological evaluations, consenting to the deposition of his treating psychiatrist, or by authorizing the release of specific information to ensure his compliance with the ongoing treatment regimen. For the following reasons, we agree with Father's positions and find that the trial court erred in compelling him to disclose his confidential mental health records in contravention of 42 Pa.C.S. § 5944 and 50 P.S. § 7111.

Pursuant to § 5944, Father's communications with his psychiatrist and psychologist are privileged and cannot be released without Father's written consent. However, as noted in *Gates, supra,* we previously concluded that § 5944 does not protect opinions, observations, and diagnoses. *See Commonwealth v. Moody,* 843 A.2d 402, 406 (Pa.Super.2004). Herein, however, the trial court's order was not limited to the concededly discoverable opinions, observations, and diagnoses from his psychiatrists and psychologists. Indeed, as it relates to this appeal, the trial court directed the general release of all of Father's medical records related to the May 2011 hospitalization at WPIC. As it is clear from the certified record that Father never issued a written consent to the release of his confidential communications with his mental health professionals, absent waiver of his privacy interests, the trial court erred to the extent that it directed Father to provide Mother with these confidential communications.

Next, we address Father's claims of privilege under § 7111 of the MHPA. The MHPA applies to "all involuntary treatment ... whether inpatient or outpatient, and ... all voluntary inpatient treatment[.]" *See* 50 P.S. § 7103. In *Gates, supra* at 1029, we explained that unlike the narrow provisions of 42 Pa.C.S. § 5944 that are limited to confidential communications with psychiatrists and psychologists, "50 P.S. § 7111(a) is a broad provision that applies to all of the records concerning [a person's] mental health treatment." Thus, absent Father's written consent or a finding of waiver, all of the documents relating to Father's voluntary inpatient hospitalization during May 2011 are privileged and are not subject to compelled disclosure.

Notwithstanding the trial court's protestation to the contrary, the alleged severity of Father's mental health concerns did not vitiate his expectation of confidentiality in his mental health records. As our Supreme Court highlighted in the context of a civil dispute in *Zane, supra* at 34, and we reiterated in a custody matter in *Gates, supra* at 1032, "the importance of confidentiality cannot be overemphasized [and][t]he purpose of the Mental Health Procedures Act ... would be severely crippled if a patient's records could be the subject of discovery in a panoply of possible legal proceedings." Hence, absent case law to the contrary or any indication from our legislature that it intended to weigh the severity of an impairment in determining the statutory grant of confidentiality, we find that the alleged severity of the mental health problem is not a permissible reason to compromise the privilege of confidentiality. Thus, the trial court erred in compelling disclosure of Father's mental health records on this basis.

Moreover, we agree with Father's position that less intrusive alternatives exist, such as an updated psychological evalua-

tion pursuant to Rule 1915.8, to determine the effect of Father's bipolar personality disorder on his daughter's best interest. Herein, Father submitted to a court-ordered evaluation during 2010 and permitted the appointed psychologist to access his mental health information and treatments in order to facilitate the evaluation. In addition, Father agreed to submit to an updated psychological examination in accordance with the trial court's August 8, 2011 order. The updated evaluation was intended to specifically address Father's current mental health status as it related to his parenting and care of his daughter. *See* Trial Court Order, 7/15/11. However, since Mother filed the petition that is the genesis of this appeal, the updated evaluation was never performed. As the court-ordered psychological evaluation is the least intrusive means to determine how a parent's mental health condition will affect a child's best interest, it is the preferred method of evaluation. *See Zane, supra; Gates, supra.*

In noting our preference for an updated psychological evaluation over the compelled disclosure of statutorily privileged mental health records to a party opponent, we specifically reject Mother's position that the updated evaluation would be inadequate to "assess or anticipate the ebb and flow of [Father's] mental stability ... [or] assist the Court with managing Father's mental health[.]" Mother's brief at 12. Mother's position is untenable in light of the fact that her requested alternative to an expert's evaluation would be to permit **her** to peruse the mental health records indiscriminately. Tellingly, Mother's only explanation for forgoing the updated mental health evaluation by a court-appointed expert and, instead, demanding the wholesale disclosure of the mental health record, is to provide her own expert witness a basis to proffer an opinion "as to how to handle Father's condition and his ability to parent with this condition." *Id.* Indeed,

the crux of Mother's position is that she prefers to present her expert's opinion to the trial court rather than the unquestionably neutral conclusion of the court-appointed mental health expert. *See id.* at 13 ("Mother receiving [Father's] records now allows her to decide her strategy ... or it may serve to sooth (sic) both she and the Court's nerve's about Father's well-being.") As achieving H.M.'s best interest, rather than soothing Mother's nerves, is the cynosure of this custody litigation, Mother's myopic perspective is unpersuasive.

As we observed in *Gates, supra,* the chilling effect associated with permitting one parent to intrude upon the other parent's confidential relationships with his or her mental health professionals compromises the child's best interests because the parent receiving mental health treatment will be less candid with the treating professionals. Accordingly, having failed to establish that the least intrusive alternative, *i.e.,* updating Father's psychological evaluation, is insufficient to determine the effects of Father's mental health upon H.M.'s best interest, Mother's position requiring the total disclosure of Father's mental health records fails.

■ Finally, we find that Father did not waive his privilege of confidentiality in his mental health records. As noted, *supra,* the trial court found three bases for waiver: (1) Father's submission to the court-ordered psychological evaluation in 2010; (2) his consent to the deposition of his treating psychiatrist; and (3) his authorization to release specific information to ensure his compliance with appointments and drug treatment. *See* Trial Court Opinion, 2/1/12, at 12–13. In addition, Mother attempts to bolster the trial court's conclusion by referencing Father's authorization for the *in camera* review of certain records during 2010, his deposition testi-

mony addressing his hospitalizations and medical treatment, and his assent to submit to an updated psychological evaluation in 2011. Mother's brief at 9. We address these contentions *seriatim.*

First, we conclude that Father did not waive his statutory privileges of confidentiality by submitting to the court-ordered psychological evaluation in 2010. Unlike the instant discovery order, Rule 1915.8 does not empower trial courts to compel parties to disclose their confidential information to their opponents. As demonstrated by our rationale in *Gates, supra,* court-ordered mental health evaluations are the preferred method of determining whether a person's mental health problems would affect their child's best interest. Hence, we are not inclined to find that Father's prior compliance with a court-ordered psychological evaluation by a court-appointed expert vitiated his right to invoke his statutory privileges of confidentiality at this juncture, especially, in light of the fact that Father's alternative to complying with the trial court's 2010 directive would have required his wholesale disclosure of his privileged mental health information.

■ Likewise, Father's consent to the deposition of a treating physician is not tantamount to waiver of his right to confidentiality. Indeed, as we previously noted, Dr. Spiker could testify about his opinions, observations, and diagnoses without violating the psychiatrist-psychologist privilege pursuant to § 5944 because they do not involve confidential communications. *See Moody, supra.* Father would be permitted to object during the deposition if Mother's inquiry strayed into privileged areas. Moreover, to the extent that Father had notice that Mother intended to inquire of patently privileged information under § 5944 or the MHPA, Father was not required to object to the deposition until the proceeding was scheduled to oc-

cur. *See* Pa.R.C.P. 4016 ("Objection to taking a deposition because of the disqualification of the person before whom it is to be taken is waived unless made before the taking of the deposition[.]"). Herein, Mother never scheduled Dr. Spiker's contemplated deposition. Thus, it cannot be grounds to find that Father waived his privacy privileges.

For similar reasons, we find that Father's April 2011 authorization to release specific information to ensure his compliance with appointments and drug treatment does not sustain a finding of waiver. The pertinent consent order provided "The parties agree that Father will provide a release to Dr. Spiker releasing specified information to Mother['s][and] Father's counsel on a monthly basis to ensure compliance with appointment and drug treatment via blood tests from the date forward." Custody Order, 4/11/11, at unnumbered page 2. It is axiomatic that the specific information that Father agreed to release was not privileged under either § 5944 or the MHPA. As it relates to § 5944, the information did not include privileged confidential communications between Father and his mental health professionals. Similarly, the information was beyond the scope of the MHPA because it does not involve involuntary treatment or voluntary inpatient treatment. *See* 50 P.S. § 7103. Since the information Father agreed to release in the April 4, 2011 consent order was neither protected by § 5944 nor the MHPA, his assent to release that information is not a basis to find that he waived either of the statutory privileges.

■ We also reject Mother's contentions of waiver. First, for the reasons we declined to find that Father waived his statutory privileges by submitting to the court-ordered psychological evaluation in 2010, we cannot find that Father waived

his privacy privileges by authorizing the *in camera* review of certain records during 2010 or by agreeing to the updated psychological evaluation during 2011. Simply stated, Father's prior consent to release certain information for *in camera* review during 2010 does not bear upon Mother's current demand for his mental health records associated specifically with his May 2011 hospitalization. Moreover, the 2010 authorization was the least intrusive alternative available to the parties at that time and, as previously discussed at length, performing an updated mental evaluation is the preferred manner to determine the current effect of Father's mental health on H.M.'s best interest.

Next, we find that Mother's attempts to invoke Father's December 2010 deposition, which Mother contends addressed his prior hospitalizations and medical treatment, as a basis to find waiver is unavailing for two reasons. First, like Dr. Spiker's proposed testimony and the information Father provided in the April 2011 authorization, Father's recollection of his physician's opinions, observations, and diagnoses and his testimony relating to his voluntary outpatient treatment are not protected under § 5944 or the MHPA. Thus, those statements do not sustain the disclosure of privileged information. Second, and more importantly, the notes of testimony from Father's deposition were not included in the certified record. Therefore, it does not exist for the purpose of our review. *In re J.F.*, 27 A.3d 1017, 1024 n. 10 (Pa.Super.2011) (quoting *Stumpf v. Nye*, 950 A.2d 1032, 1041 (Pa.Super.2008)) ("It is well-settled that this Court may only consider items which have been included in the certified record and those items which do not appear of record do not exist for appellate purposes."). As the non-record deposition from December 2010 is not included in the certified record, we cannot review the scope, content, or context of Father's supposed testimony to determine whether he disclosed privileged information. Thus, we cannot determine whether Father waived his current claim that his mental health records associated with the May 2011 hospitalization are confidential.

Accordingly, for all of the foregoing reasons, we reverse the portion of the trial court's November 7, 2011 order directing Father to disclose to Mother his mental health records associated with his May 2011 hospitalization and the records of Father's post-hospitalization treatment that are beyond the limited scope of the consent agreement memorialized in the April 4, 2011 order. Specifically, we conclude that Father's May 2011 inpatient hospitalization and any of his confidential communications with his treating psychiatrist and psychologist are not subject to Mother's discovery request. We do not disturb the remaining portions of the trial court's discovery order.

Order reversed in part. Case remanded. Jurisdiction relinquished.