J-S18037-20

2020 PA Super 159

| | | | |
|---|---|---|---|
| C.L. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| | : | | |
| M.P. | : | | |
| | : | | |
| Appellant | : | No. 1958 MDA 2019 | |

Appeal from the Order Entered November 15, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-FC-41210

| | | | |
|---|---|---|---|
| C.L. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| | : | | |
| M.P. | : | | |
| | : | | |
| Appellant | : | No. 1959 MDA 2019 | |

Appeal from the Order Entered October 29, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-FC-41210

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY KUNSELMAN, J.:          **FILED JULY 08, 2020**

In this custody case, the Majority authorizes the guardian *ad litem* (GAL) to access Mother's mental health records for the last three years.  Because I believe the Mental Health Procedures Act (MHPA) – and Pennsylvania case law interpreting it – precludes the disclosure of such records in custody proceedings, I respectfully dissent.

---

[*] Former Justice specially assigned to the Superior Court.

The Majority inexplicably ignores our clear, factually on-point, and relatively recent custody precedents of **M.M. v. L.M.**, 55 A.3d 1167 (Pa. Super. 2012) and **Gates v. Gates**, 967 A.2d 1024 (Pa. Super. 2009), where this court held that parents do not waive their MHPA privileges, simply because they are involved in custody litigation. First, in **Gates**, we concluded that a mother did not waive her MHPA privilege, even though, *inter alia*, she initially failed to invoke that privilege and she previously agreed to release certain mental health documents. 967 A.2d at 1030-1032. Then, in **M.M.**, we concluded that the father did not waive his MHPA privilege, even though the mother put his mental health at issue, and even though the father's personal mental health ailment was rather severe. 55 A.3d at 1174. In both cases, we concluded there was no implicit waiver. In reaching those conclusions, we acknowledged that a "less intrusive means" existed to determine the effect of a parent's mental health upon a child's best interests. **See Gates**, 967 A.2d at 1032; **see also M.M.**, 55 A.3d at 1174. In custody cases, the "less intrusive means" available is Pennsylvania Rule of Civil Procedure 1915.8 ("Physical and Mental Examination of Person"). Under this Rule, the trial court may order the child or the parent to submit to and fully participate in a mental health evaluation by an appropriate expert.

I believe this is all the trial court needs to order in this custody litigation to adequately determine the best interest of the child.

Instead, the Majority relies on the holding in **Octave ex rel Octave v. Walker**, 103 A.3d 1255 (Pa. 2014), a unique personal injury case, to allow

the GAL to have access to Mother's mental health records. A review of **Octave** indicates that it is factually inapposite to the instant case. There, a wife filed a personal injury lawsuit, seeking money damages on behalf of herself and her incapacitated husband, after the husband was struck by a tractor-trailer. The defendants argued that the husband intentionally caused his own injuries by attempting suicide. To defend the case against them, the defendants requested access to the husband's mental health records. The plaintiffs asserted husband's privilege under the MHPA.[1] Our Supreme Court cited with approval the following statement made by this Court in **Kraus v. Taylor**, 710 A.2d 1142 (Pa. Super. 1998):

> We cannot believe that the Pennsylvania General Assembly intended to allow a plaintiff to file a lawsuit and then deny a defendant relevant evidence, at plaintiff's ready disposal, which mitigates defendant's liability. Rather[,] the General Assembly must have intended the privileges to yield before the state's compelling interest in seeing that truth is ascertained in legal proceedings and fairness in the adversary process.

**Octave**, 103 A.3d at 1260 (citing **Kraus**, 710 A.2d at 1145) (internal citation omitted). After discussing similar decisions in other jurisdictions, the High Court then held: "Accordingly, we hold a patient waives his confidentiality protections under the MHPA where, judged by an objective standard, he knew or should have known his mental health would be placed directly at issue by filing the lawsuit. **Octave**, 103 A.3d at 1262 (footnote omitted).

---

[1] Notably, the husband later died from his injuries, but neither party asserted that the death affected the MHPA privilege. **Octave ex rel. Octave**, 103 A.3d, 1255, 1256, n.2 (Pa. 2014).

The Majority interprets this holding to mean that, in the instant case, the trial court could order Mother's disclosure of the mental health records, because Mother had reason to know that her mental health would be at issue during the custody trial. The Majority explains that trial court employed "less intrusive means" by limiting the disclosure to only the last three years of treatment, and by limiting the disclosure to the Child's GAL. In my view, the Majority incorrectly applied **Octave** for two reasons.

First, when the Court in **Octave** allowed access to the injured husband's mental health records, it explicitly distinguished its facts from those in **M.M.** **See Octave,** 103 A.3d at 1263, n.10. The High Court mentioned **M.M.** as a prime example of when discovery of mental health records was inappropriate, because there were "less intrusive means" of obtaining the same type of information. **Id.** (referring to Rule 1915.8, and noting that in **Octave**, less intrusive alternatives, such as interrogatories and independent psychological evaluations, were not available, since the injured husband died from his injuries).[2]

Thus, the Majority ironically relies on **Octave** – a personal injury case involving MHPA waiver – to construe its version of "less intrusive means" in

_____

[2] The Majority claims it does not rely on **Octave** to conclude Mother waived her confidentiality claim in this custody case, but rather as support for its decision that turning the records over to the GAL is the "least intrusive means" to obtain this information. **See** Majority Opinion at *19, n.11. Our precedent already established that a Rule 1915.8 evaluation is the "less intrusive means" of obtaining the same type of information in a custody case. **See M.M. v. L.M.** 55 A.3d 1167, 1174 (Pa. Super. 2012).

this custody case, even though **Octave** cited our previous custody procedure to explain why "less intrusive means" did not exist in its personal injury case.

Second, and perhaps more alarming, there is no way for the Majority to apply **Octave** to the instant custody case without setting precedent for disclosure of a parent's mental health records in every custody case. The Majority suggests that **Octave** only applies here, because Mother put her own mental health at issue. **See** Majority Opinion at *19, n.11. I disagree with this characterization; according to the trial court, Mother actually put **Father's** mental health at issue. **See id.** at 3. But it does not make a difference who put mental health at issue, because the mental health of the parents is directly at issue in **every** custody hearing, by virtue of Section 5328(a)(15) of the Child Custody Act. **See** 23 Pa.C.S.A. § 5328(a)(15) (The judge must consider the "mental and physical condition of a party or member of a party's household."). Thus, by the Majority's logic, all parents risk disclosing their mental health records anytime they are involved in custody litigation. Even if the Majority were to reserve disclosure of these records for only those "venomous[3]" custody cases involving pointed mental health allegations, all a parent would need to do is artfully plead such an allegation. At that point, one parent could force the other parent to disclose his or her mental health records, which, by their very nature, involve "one's most intimate expressions." **See Octave** 103 A.3d at 1260.

---

[3] **M.M.** 55 A.3d at 1171 (discussing **Gates**, 967 A.2d 1024).

With due respect to the Majority, I cannot help but envision the proverbial "parade of horribles" inadvertently unleashed by its decision. In a custody case, where one parent sees a therapist, I wonder: how often does a parent discuss the emotional wreckage left in the wake of the relationship with the former partner? How often does one address one's own shortcomings as a newly single parent, or one's inability to co-parent with an ex? Under the Majority's decision, when parents seek professional help for these issues, they must be careful about what they discuss with their therapists because this private information may be disclosed in future custody litigation. So what should parents do? Cease mental health treatment, for fear that the other parent will use anything they say against them in family court; or, cease litigating in custody court for what they believe is in their child's best interests.

The Majority opens the door to a "new…and dangerous tactic in heated custody disputes." **See In re Adoption of L.J.B.**, 18 A.3d 1098, 1110 (Pa. 2011) (discussing the potential for parental misuse of a statutory exception to the Adoption Act, 23 Pa.C.S.A. § 2101 *et seq.*). Their decision today further brings to fruition the "chilling effect," as foretold by **M.M.**, 55 A.3d at 1175.

I recognize that the Majority believes the trial court correctly applied the "less intrusive means" analysis, because it is only authorized the disclosure of Mother's mental health records for the last three years and, restricted access to those records to the Child's GAL, not Father. Nevertheless, I believe this is a misapplication of the "less intrusive means" analysis for several reasons.

First, the "less intrusive means," already approved in custody cases, is the evaluation provided in Rule 1915.8. **See M.M.**, 55 A.3d at 1174; **see also Octave** 103 A.3d at 1263, n.10 (citing **M.M.**, 55 A.3d 1167). Nothing more is needed.

Second, the privilege in the MHPA protects any disclosure of the records; the privilege is not waived by limiting who receives the disclosed information. The disclosure itself sounds alarm bells.

Third, the Majority and the trial court must assume that giving Mother's mental health records to Child (by way of the GAL) is less intrusive than giving the records to Father. The court simply treats the GAL as less of an "opponent" to a parent's position than the opposing parent, without any explanation or authority. According to the trial court, one reason for compelling disclosure of these records was an allegation by Father regarding Mother's drug and alcohol abuse. Once again, an evaluation under Rule 1915.8 is available to the court to address this concern. This Rule authorizes the court to order both mental health and drug and alcohol evaluations. **See id.** Explanatory Comment – 2007. I do not believe the Child or GAL is any more entitled to the mental health records than the opposing parent is.

Finally, I do not construe this case as a battle between the provisions of the Child Custody Act, (23 Pa.C.S.A. § 5334) and the Mental Health Procedures Act (50 P.S. § 7111). Section 5334 of the Custody Act authorizes the GAL to have access to "reports of examination of the parents or other custodian of the child and medical, psychological and school records."

Breaking down this provision, I believe the "reports of examination of the parents of other custodian of the child" refers to the mental health reports, if any, created under Rule 1915.8. These "reports" are not meant to include a parent's mental health records. Moreover, I believe it self-evident that the second part of this provision – "and medical, psychological and school records" – refers exclusively to the records of the **child**, not the parents. Surely, the Child Custody Act does not intend to give the GAL access to a parent's college transcript.

In sum, I believe Mother's mental health records are absolutely privileged under the mandates of the MHPA. 50 P.S. §7111. Section 7111(a) requires a patient's "written consent" before those records are released or disclosed, except under limited circumstances inapplicable here. Although our Supreme Court found implicit waiver of the privilege under the unusual facts of **Octave**, in doing so it expressly noted, "we utilize our authority in this area **carefully** and urge courts to use **great caution** in accepting this form of implicit waiver." **Octave**, 103 A.3d at 1263 (emphasis added).

In custody cases, such as this one, this Court has already determined that the same information may be gleaned from a Rule 1915.8 evaluation; *i.e.*, a less intrusive means. Thus, I believe we should follow our precedent in **M.M.** and **Gates**, and reverse the order of the trial court. The MHPA and our precedents do not allow the disclosure of Mother's mental health records in this custody case, even if limited to three years, and even if limited to access by the Child's GAL. For these reasons, I respectfully dissent.