J-S32002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| P.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.S. | : | |
| | : | |
| Appellant | : | No. 28 EDA 2020 |

Appeal from the Order Entered December 9, 2019
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  No. 180808471

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED SEPTEMBER 09, 2020**

Appellant S.S. (Husband) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) denying his motion for a protective order with respect to a subpoena for his medical records in an action filed by Appellee P.K. (Wife) seeking an annulment of their marriage.  For the reasons set forth below, we reverse.

Husband and Wife were married on April 20, 2018.  At the time that they first met, Husband lived in Michigan and Wife lived in Philadelphia, Pennsylvania.  N.T., 3/27/19, at 13. Following the marriage, Husband moved from Michigan and he and Wife lived together in Philadelphia from May 21, 2018 through July 31, 2018.  *Id.* at 29-30, 82-83.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On August 16, 2018, Wife filed a petition to annul the marriage on the ground of fraud, alleging that the parties discussed whether either of them had any psychiatric or psychological conditions prior to agreeing to marry and that Husband misrepresented that he had not been diagnosed with any psychiatric or psychological condition. Petition for Annulment of Marriage ¶7(e), (g). Wife contends that on August 5, 2018, she discovered that Husband had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and dysthymic disorder and that she would not have married him if she had known of those diagnoses. N.T., 3/27/19, at 9-11, 32, 57; Wife's Brief in Opposition to Protective Order at 4-5; Petition for Annulment of Marriage ¶7(e). Wife has also alleged that Husband, a citizen of India who is legally in the United States and had a pending employer-sponsored application for a green card, fraudulently induced her to marry him in order to obtain a spousal-sponsored green card application, which would be acted on more quickly than the employer-sponsored application. Petition for Annulment of Marriage ¶7(b), (f); N.T., 3/27/19, at 20, 24-29, 39.

Husband denied that he misrepresented his psychiatric or psychological condition to Wife, denied that he married her to obtain a spousal sponsored green card, and denied that he committed any immigration fraud. Answer to Petition for Annulment of Marriage ¶7(b), (e)-(f). Husband filed a counter-claim for divorce, seeking a no-fault divorce and a fault divorce.

On March 19, 2019, Wife file a motion to compel Husband to answer interrogatories and produce documents concerning his mental health history. Following a hearing, the trial court on May 9, 2019 entered an order denying the motion to compel without prejudice. Trial Court Order, 5/9/19.

On April 4, 2019, Wife also served Husband with a notice of intent to serve a subpoena on the Amen Clinic, Inc. (Amen Clinic) for production of the following documents:

> Any and all documentation/information of any nature or kind, whatsoever, including, but not limited to, all records, reports, notes or schedules, all raw data diagnosis or diagnoses, history or histories, notes and/or records of consultations, prognosis or prognoses and/or treatment(s), mental status examination(s), clinical abstracts, charts for any condition(s) or symptoms for which [Husband] has and/or is diagnosed with and/or treated for, including, without limitation, psychiatric disorders, psychological disorders, and/or mental or nervous conditions, including but not limited to depression or anxiety.

Subpoena to Amen Clinic. On April 17, 2019, Husband filed an objection to the subpoena on the grounds that the medical records that it seeks are privileged, that they are private and confidential personal information, and that they are irrelevant, and moved for a protective order quashing the subpoena. Following a hearing, a different judge of the trial court on December 9, 2019 entered an order denying Husband's motion for a protective

order. Husband timely appealed this order.[1] On January 24, 2020, this Court entered an order staying the subpoena pending this appeal.

Husband argues that the May 9, 2019 order denying Wife's motion to compel barred the trial court from holding that the documents that the subpoena seeks are relevant to this proceeding and barred the trial court from allowing their discovery. We do not agree.

Under the coordinate jurisdiction rule, an aspect of the law of the case doctrine, a judge may generally not alter the resolution of a legal question previously decided by another judge of the same court. ***Riccio v. American Republic Insurance Co.***, 705 A.2d 422, 425 (Pa. 1997). This rule, however, applies only where the second judge rules on the same type of motion as the first judge; the coordinate jurisdiction rule does not bar a judge from ruling differently where the motions are not of the same type. ***Id.***; ***K.H. ex rel. H.S. v. Kumar***, 122 A.3d 1080, 1091-92 (Pa. Super. 2015); ***Mellon Bank, N.A. v. National Union Insurance Co. of Pittsburgh***, 768 A.2d 865, 870-71 (Pa. Super. 2001). The issue of whether the coordinate jurisdiction rule applies is a question of law subject to our plenary, *de novo* review. ***Zane v. Friends Hospital***, 836 A.2d 25, 30 n.8 (Pa. 2003).

---

[1] Although the December 9, 2019 denial of the motion for a protective order is not a final order, this Court has jurisdiction to decide this appeal because an order requiring disclosure of allegedly privileged material is an appealable collateral order under Pa.R.A.P. 313. ***Farrell v. Regola***, 150 A.3d 87, 95-96 (Pa. Super. 2016); ***Buckman v. Verazin***, 54 A.3d 956, 959 (Pa. Super. 2012); ***Gormley v. Edgar***, 995 A.2d 1197, 1201 (Pa. Super. 2010).

Here, while the two motions both related to discovery of Husband's medical history, they were different motions. The first motion was a motion filed by Wife to compel discovery from Husband concerning his mental health history for the last five years. Wife's Motion to Compel; Husband's Responses to Wife's First Set of Interrogatories, Nos. 72-74. The instant matter, in contrast, was a motion for a protective order filed by Husband to prevent discovery of medical records from the specific provider that Wife alleged had diagnosed the conditions on which she bases her annulment claim. Moreover, although the first judge denied the motion to compel on the ground that the information and records sought had not been shown to be relevant, she denied the motion "without prejudice." N.T., 5/9/19, at 10, 13-14; Trial Court Order, 5/9/19. Given the differences in the motions and the fact that the first motion was denied without prejudice, the coordinate jurisdiction rule did not bar the trial court from denying the motion for a protective order.

With respect to the merits, Husband argues that the trial court erred in denying the motion for a protective order because the subpoena seeks records protected by the psychiatrist/psychologist-patient privilege. We conclude that some of the documents sought by Wife's Amen Clinic subpoena are not protected by the psychiatrist/psychologist-patient privilege, but that the subpoena also seeks privileged records and that the trial court therefore erred in failing to grant a protective order limiting the scope of the subpoena.

The issue of whether medical records are protected from discovery by the psychiatrist/psychologist-patient privilege is a question of law subject to our plenary, *de novo* review. **Commonwealth v. Segarra**, 228 A.3d 943, 950 (Pa. Super. 2020); **Farrell v. Regola**, 150 A.3d 87, 96 (Pa. Super. 2016). The statute setting forth this privilege provides:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.

This privilege protects from discovery a psychiatrist's or psychologist's records that contain information communicated by the patient for treatment, even if that information is highly relevant in a civil or criminal case, unless the patient consents to the disclosure or waives the privilege. **In re J.M.G.**, 229 A.3d 571, 579-80 (Pa. 2020); **Farrell**, 150 A.3d at 97-101; **M.M. v. L.M.**, 55 A.3d 1167, 1174 (Pa. Super. 2012); **Commonwealth v. Simmons**, 719 A.2d 336, 340-41 (Pa. Super. 1998). It does not protect from disclosure the psychiatrist's or psychologist's opinions, diagnoses, observations, or treatment, and does not apply to records that do not contain patient communications. **Farrell**, 150 A.3d at 97-98; **M.M.**, 55 A.3d at 1174; **Gates**

*v. Gates*, 967 A.2d 1024, 1029 (Pa. Super. 2009); *Simmons*, 719 A.2d at 341.[2]

Here, the subpoena seeks records of "diagnoses," "prognoses," "treatment(s)," and "mental status examination[s]." Records of the psychiatrist's conclusions, observations of Husband's condition, and treatment decisions that do not report Husband's communications are not protected by the psychiatrist/psychologist-patient privilege. *M.M.*, 55 A.3d at 1174; *Gates*, 967 A.2d at 1029. The trial court therefore did not err in refusing to quash the subpoena in its entirety based on the psychiatrist/psychologist-patient privilege.

The subpoena, however, is not limited to these types of documents. Rather, it also seeks "[a]ny and all documentation/information of any nature or kind, whatsoever, including, but not limited to all records, reports, … history or histories, notes and/or records of consultations." Such records plainly would contain communications from Husband to those treating him that are privileged and protected from disclosure.

---

[2] The Mental Health Procedures Act (MHPA) protects mental health treatment records from disclosure and is not limited to patient communications. 50 P.S. § 7111(a); *M.M.*, 55 A.3d at 1174; *Gates*, 967 A.2d at 1029. The MPHA, however, applies only to involuntary treatment and voluntary inpatient treatment. 50 P.S. § 7103; *M.M.*, 55 A.3d at 1174. There is no claim that Husband was involuntarily committed or was an inpatient at the subpoenaed clinic or that the MPHA applies here.

There was no consent by Husband to this disclosure; he consistently objected to the disclosure of his medical records and the subpoena. Husband's Responses to Wife's First Set of Interrogatories, Nos. 72-74; N.T., 5/9/19, at 5, 8-9; Husband's Objection to Subpoena and Motion for Protective Order ¶¶7-8; N.T., 12/9/19, at 8-9, 12. Nor was there any waiver. Although he did not specifically reference 42 Pa.C.S. § 5944 or the psychiatrist/psychologist-patient privilege, Husband argued to the trial court that he was entitled to a protective order with respect to these medical records because they were privileged and protected by privacy limitations on access to medical records. Husband's Objection to Subpoena and Motion for Protective Order ¶¶7-8, 15; N.T., 12/9/19, at 8-9, 12. That is sufficient to preserve his claim that the records are protected by the psychiatrist/psychologist-patient privilege. *Gates*, 967 A.2d at 1030-31 (assertion that mental health records were privileged medical information was sufficient to preserve claim of statutory mental health records privilege even though patient did not reference the specific privilege).

Contrary to Wife's assertions, there was no evidence of any conduct by Husband that could constitute waiver of the privilege. While filing an action that places one's mental condition at issue or asserting a claim for relief based on one's mental condition can constitute a waiver of the psychiatrist/psychologist-patient privilege, *Gormley v. Edgar*, 995 A.2d 1197, 1204-06 (Pa. Super. 2010), Husband has not sought relief based on his

mental condition or filed any action that places his mental condition at issue. Instead, it is Wife that raised this issue. There was no claim that Husband sent or gave Wife any record concerning his medical condition. To the contrary, Wife contended that she accidentally discovered the one medical record of Husband's that she has when it fell out of a folder while she was going through a box that she knew contained Husband's possessions as well as her own possessions. N.T., 3/27/19, at 32, 37-38. Wife did not claim that Husband asked her to go through or look at his belongings that were in the box nor did she introduce evidence that Husband was the one who put his belongings in the box with her things.

Because the subpoena's breadth requires production of records that are protected by the psychiatrist/psychologist-patient privilege and there was no consent to release of the records or waiver of the privilege, the trial court erred in not granting a protective order limiting the subpoena to records of diagnoses, treatment, and observations with any communications by Husband redacted. *M.M.*, 55 A.3d at 1174 (reversing trial court order for production of records because production was not limited to opinions, observations, and diagnoses); *Simmons*, 719 A.2d at 343-44 (vacating trial court order for production of records because production of whole file was ordered even though many documents in file were not privileged).

Husband also argues the Amen Clinic records are protected from discovery by the right of privacy and the federal Health Insurance Portability

and Accountability Act of 1996 (HIPAA).  While we do not agree that the right of privacy or HIPAA prohibits disclosure of all of the records sought by the subpoena, the trial court nonetheless erred in failing to grant a protective order on this basis limiting the subpoena and use of the subpoenaed records.

Even where there is no statutory privilege, a patient has a right of privacy under the Pennsylvania Constitution that may limit the court-ordered disclosure of records of medical treatments and diagnoses that would otherwise be discoverable.  *Stenger v. Lehigh Valley Hospital Center*, 609 A.2d 796, 800-02 (Pa. 1992); *Lykes v. Yates*, 77 A.3d 27, 31 (Pa. Super. 2013); *Buckman v. Verazin*, 54 A.3d 956, 962-64 (Pa. Super. 2012); *Jones v. Faust*, 852 A.2d 1201, 1205-06 (Pa. Super. 2004).  This right of privacy is not absolute and medical records may be ordered disclosed where the need for disclosure outweighs the harm to the patient's privacy.  *Stenger*, 609 A.2d at 800-04; *Jones*, 852 A.2d at 1206.  The factors that the court must weigh to determine whether the right of privacy bars a subpoena or other court-disclosure of medical records or information include the potential harm to the patient from the disclosure, the adequacy of safeguards to prevent further disclosure, the need for the medical records or information, and whether there is any statutory mandate, public policy, or recognizable public interest that supports the disclosure.  *Stenger*, 609 A.2d at 801-02; *Lykes*, 77 A.3d at 31; *Buckman*, 54 A.3d at 961.

HIPAA restricts disclosure of health information without the consent of the patient, but permits such disclosure in litigation in response to a subpoena or discovery request where notice has been given to the patient and there is a protective order that prohibits the parties from using or disclosing the health information for any purpose other than the litigation and requires the return or destruction of all copies of the health information at the end of the litigation. 45 C.F.R. § 164.512(e)(1)(ii)-(v).

Here, Wife showed a high degree of need for Husband's medical records with respect to diagnoses of ADHD or dysthymic disorder prior to the parties' April 20, 2018 marriage. Her petition for annulment is based on the claim that Husband misrepresented to her that he did not have those conditions and that she would not have married him if she had known that he had those conditions. Husband does not admit that he has either of those conditions and disputes that the Amen Clinic document on which she bases her claim of fraud is sufficient to prove that he has been diagnosed with those conditions. N.T., 3/27/19, at 32-35, 208-09. The harm from disclosure of records limited to these alleged diagnoses prior to the marriage for use solely in this litigation is also not unduly great as Wife already has possession of a record that contains the diagnostic codes for these two conditions.

If the trial court had imposed adequate safeguards to prevent disclosure outside of the litigation, the balance of interests would permit the subpoenaing of pre-April 20, 2018 Amen Clinic records with respect to whether Husband

had ADHD and dysthymic disorder. The record, however, is devoid of any evidence of safeguards to protect against such further disclosures. It does not appear that any protective order or confidentiality agreement or order has been entered that restricts Wife, her attorneys, and any other person receiving the records or information from the records from disclosing the records or information outside the litigation and neither party has asserted that such an order has been entered. Unless such a restriction on use of the medical records and information obtained by the subpoena is ordered, the harm to Husband's right of privacy from permitting the subpoenaing of the records outweighs Wife's need for his medical records.[3] **Compare Stenger**, 609 A.2d at 802 (upholding disclosure of medical information necessary to prove plaintiff's claim because restrictions on the information disclosed were adequate to protect privacy).

In addition, Wife has no substantial need for medical records of Husband that were created after April 20, 2018 or that concern diagnoses other than the two conditions that are the basis of her annulment claim. Any fraudulent statements by Husband that induced Wife to marry him had to occur before the marriage and therefore only evidence of Husband's medical

---

[3] While it does not appear that Husband specifically sought a restriction on use of the records, he raised his privacy rights and the HIPAA restrictions, both of which require consideration whether there is a restriction on further disclosure. The issue of whether adequate protections have been provided is therefore properly before this Court.

condition prior the April 20, 2018 can be relevant. Only misrepresentations concerning ADHD and dysthymic disorder have been asserted by Wife as the basis for the annulment petition. The possibility that Wife might discover additional misrepresentations on a fishing expedition through Husband's medical records does not rise to a substantial need that can outweigh his privacy rights. Moreover, the adverse effect on Husband's privacy is greater because Wife is not already aware of any conditions other than possible ADHD and dysthymic disorder. There is no statute, public policy, or public interest militating in favor of disclosing medical records of a party who did not choose to place his medical condition in issue or in favor of disclosure of depression, anxiety, or other psychiatric disorders, psychological disorders, mental or nervous conditions. Rather, the sole need for Husband's medical records is Wife's private interest in proving her fraud claim. There is therefore no need for post-April 20, 2018 records or records concerning diagnoses other than ADHD and dysthymic disorder that can outweigh Husband's right of privacy, even if a confidentiality order is imposed.

Because the subpoena included documents and information protected by the psychiatrist/psychologist-patient privilege and Husband's constitutional right of privacy and no protective order limiting use of the records was entered, we reverse the trial court's order denying Husband's motion for a protective order. We remand this case with instructions that the trial court grant a protective order that permits Wife to subpoena from the Amen Clinic

only records prior to April 20, 2018 concerning diagnoses of ADHD or dysthymic disorder, with any communications by Husband redacted, and restricts the disclosure of such records and any information obtained from them outside this annulment proceeding.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/20